**Denise LANIER, Plaintiff-Appellee Cross-Appellant,**

**v.**

**J.B. SALLAS and Juanice Reed, Defendants Cross-Appellees,**

**v.**

**J.W. BIDDIX and Carl O. Murray, Defendants-Appellants Cross-Appellees.**

**No. 84–2673 Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1985.

Rehearing Denied Jan. 3, 1986.

Potter, Guinn, Minton & Roberts, John H. Minton, Jr., Michael G. Carroll, Tyler, for defendants-appellants cross-appellees.

Donald Grissom, Donald H. Grissom, J. Michael English, Austin, Tex., for plaintiff-appellee cross-appellant.

Mike Hatchell, Tyler, Tex., for Sallas & Reed.

Donald J. Gordon, Crockett, Tex., Jack Flock, Tyler, Tex., for Other Interested Parties.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

A plaintiff brought an action for damages under 42 U.S.C. § 1983 together with state-law causes of action occasioned by her commitment to a mental institution. She was committed on the basis of a diagnosis made by doctors who certified that they had examined her although they had never even seen her. The plaintiff prevailed on her pendent state-law claim for medical malpractice, won a verdict of $100,-000, then accepted a remittitur reducing the award to $50,000. The doctors appeal the judgment, and the plaintiff appeals the district court's refusal to submit her claim for punitive damages to the jury. The record amply supports the finding of liability against the doctors. The claim for puni-

tive damages is inextricably intertwined with the claim for compensatory damages, and, consequently we hold that the plaintiff's acceptance of a remittitur bars her appeal of the court's action on the punitive-damage claim. The entire judgment is, therefore, affirmed.

I.

In May, 1980, Juanice Reed was having problems with her daughter, Denise Lanier, the plaintiff in this action. She thought that her daughter was mentally ill and was in need of professional evaluation, and she, therefore, consulted on three occasions with Dr. J.W. Biddix. Reed later sought the aid of J.B. Sallas, an attorney, in deciding what to do about her daughter's behavior. Sallas referred Reed to the office of the county attorney.

Reed then applied to the county court to have Lanier committed to a mental hospital for observation and treatment. The court appointed Dr. Biddix and Dr. E.S. Darsey to examine Denise, in anticipation of a hearing scheduled for August 6. On July 22, Dr. Biddix executed a Certificate of Medical Examination which certified that he had examined Lanier on May 31. That same day, Dr. Darsey certified that he had examined Lanier on July 22. Each doctor also certified that he had diagnosed her as schizophrenic, believed that she was likely to harm herself or others, and required hospitalization. Each doctor stated that Lanier had been under his care from "May until July." Each also explained his failure to treat her in the following words: "Due to severity of her disorder, unable to institute therapy." In fact, neither physician had ever examined or even met with Lanier and both of their affidavits were entirely false.

After a court hearing on July 22, 1980, Lanier was committed to Austin State Mental Hospital. Lanier was taken from her home in Crockett, Texas, to the state hospital in Austin on August 1. The hospital files contain two sets of documents concerning Lanier, one indicating that she had been temporarily committed, the other that

she was under an order for protective custody. Lanier was released on August 6, and, on her return to Crockett, saw Dr. Biddix for about fifteen minutes in the sheriff's office.

Lanier sued Drs. Biddix and Darsey; her mother, Reed; her mother's lawyer, Sallas; and Morgan, the judge who signed the commitment order; setting forth federal civil rights claims and state-law claims for malpractice, false imprisonment, and battery. The court granted instructed verdicts dismissing all of the federal claims against each defendant and all of the state-law claims against defendants Judge Morgan and attorney Sallas. The court submitted the remaining state-law claims for medical malpractice and false imprisonment to the jury, but refused to instruct the jury on punitive damages. The jury found for Lanier and awarded her $100,000 in damages. Reed, Lanier's mother, moved for judgment n.o.v., and her motion was granted. Drs. Biddix and Darsey moved for judgment n.o.v. and reduction of damages. The court granted the motion as to all claims except medical malpractice, and ordered a new trial unless Lanier filed a remittitur in the amount of $50,000. Lanier filed the remittitur, and the court entered judgment for her in the amount of $50,000. Drs. Biddix and Darsey appeal the judgment against them asserting that the court should have granted their motion for a judgment n.o.v., and Lanier cross-appeals, seeking trial of her punitive damages claim.

## II.

A motion for a directed verdict or judgment n.o.v. may be granted only when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." [1]

Characterizing Lanier's claim against them as an action for "misdiagnosis," the two doctors assert that Lanier failed to prove that their diagnosis was incorrect and that it led to an improper treatment. These doctors contend that, therefore, the trial court erred in denying their motion for a judgment n.o.v.

The doctors' characterization of this action as one for "misdiagnosis" is misleading. The plaintiff sought and obtained judgment for medical malpractice. Under Texas law, "[a] cause of action for medical malpractice is essentially a negligence action." [2] To prevail in such an action, a plaintiff must establish four elements: a legally cognizable duty, a failure to conform to the required standard of care, resulting actual injury, and proximate causation. [3]

Under the Texas Mental Health Code, [4] a physician who examines a patient entrusted to him owes that patient a duty to exercise the degree of skill ordinarily employed under similar circumstances by a similar specialist in the field. [5] When a doctor undertakes to diagnose a person, that person becomes his patient, regardless of whether he has seen her. The physicians cannot deny that they failed to conform to the required standard of care. Dr. Biddix testified that he did not personally examine Lanier before he diagnosed her as schizophrenic, but conceded that medical standards require a personal examination before making such a diagnosis. Dr. Darsey likewise conceded that he did not examine Lanier before signing the affidavit stating that he had.

The doctors argue that, even if they acted improperly, Lanier must establish that their diagnosis was in fact incorrect and that the error led to improper treatment.

**1.** *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

**2.** *James v. Brown,* 637 S.W.2d 914, 918 (Tex. 1982).

**3.** *Cloys v. Turbin,* 608 S.W.2d 697, 700 (Tex.Civ. App.1980).

**4.** Tex.Rev.Civ.Stat.Ann. art. 5547–1 et seq. (Vernon Supp.1985).

**5.** *James v. Brown,* 637 S.W.2d 914, 918 (Tex. 1982) (interpreting Tex.Rev.Civ.Stat.Ann. art. 5547–18 (Vernon Supp.1985)).

In essence they assert that Lanier is schizophrenic, requires treatment, got what she needed, and, therefore, she cannot have been injured by actions that led to her hospitalization. The fact of the matter is that there is no evidence whatever that Lanier suffered any mental problem save Dr. Biddix's conclusion, which he based on a fifteen-minute interview with Lanier after she had been released. He found that she was then "angry, agitated, hostile, combative," and claims that she threatened to kill him. But Dr. Biddix did not tell anyone about this purported "threat," although it was supposedly made at the sheriff's office. Immediately before the interview, Lanier had been detained, in her view wrongfully, in the state hospital in Austin for six days. She was aware that Dr. Biddix was one of the physicians who had made false statements that led to her hospitalization. A jury might have concluded that it was the situation, not any mental illness of Lanier's, that led to the symptoms that Dr. Biddix diagnosed as schizophrenia, and that his diagnosis was unworthy of belief.

■ Moreover, this defense is fundamentally incorrect because it places the burden of proof on the wrong party. Lanier was not obliged to prove her freedom from mental illness. The doctors bore the burden of establishing the defense that she was ill and required hospitalization. The jury had ample evidence from which it might have inferred otherwise. Lanier was confined in the state hospital for six days. Personnel in the hospital presumably are medical professionals who specialize in dealing with the mentally ill and who are trained to recognize the symptoms of mental illness. Nevertheless, Lanier was released from the hospital and the record does not reflect any effort by hospital personnel to prevent her release or to seek her recommitment.

■ The doctors argue, alternatively, that their negligent acts were not the proximate cause of Denise Lanier's commitment. As a prerequisite to involuntary hospitalization, Texas law requires statements by two physicians that they have examined the patient within five days of the filing of the certificate.[6] The doctors argue that the record could not support the county court's order because their false affidavits listed examinations that were recited to have occurred more than five days before their certificates were filed. Thus, they contend, the judge's error, not their actions, was the proximate cause of Lanier's commitment.

This specious argument rests on a misunderstanding of the nature of proximate cause. Under Texas law, proximate cause consists of two elements, causation in fact and foreseeability.[7] Ordinarily, whether a negligent act was a proximate cause of the damages suffered by a plaintiff is a question of fact.[8] Foreseeability is established by proof that the actor as a person of ordinary intelligence and prudence should have anticipated the damage to others created by his negligent act.[9] Foreseeability does not require anticipation of the precise circumstances that produced the injuries so long as the actor ought to have foreseen in a general way that consequences of a certain kind could result from his actions.[10]

The jury found that it was foreseeable that signing sworn documents stating that Lanier was schizophrenic might lead to her involuntary commitment. In fact, it was for that purpose that the doctors executed the certificates. The judge's alleged error in relying on the doctors' certifications because they were dated more than five days earlier is not an intervening or superseding

---

6. Tex.Rev.Civ.Stat.Ann. art. 5547–46 (Vernon Supp.1985).

7. *Marshall v. Joske's, Inc.,* 581 S.W.2d 192, 194 (Tex.Civ.App.1979).

8. *Clark v. Waggoner,* 452 S.W.2d 437, 440 (Tex. 1970).

9. *Id.* at 439–40.

10. *Id.* at 439 n. 2. *Accord,* Restatement (Second) of Torts § 442B (1965).

act of negligence so as to become the sole proximate cause of Lanier's commitment. It was not the judge's failure to note the date of the certificates, but their falsity as to material facts that caused him to issue the order that resulted in Lanier's commitment.

### III.

Lanier raises two issues on cross appeal. She challenges both the trial court's refusal to submit the issue of punitive damages to the jury and its grant of a motion for directed verdict dismissing the legal malpractice action against Sallas.

■ Texas practice permits a plaintiff who accepts a remittitur to challenge it on cross appeal if the defendant appeals from the remitted judgment.[11] Federal courts, however, determine appealability by applying federal law, and, even in diversity-jurisdiction cases, state practices are irrelevant.[12]

■ The Supreme Court has held in *Donovan v. Penn Shipping Co.,* that "a plaintiff cannot appeal the propriety of a remittitur order to which he has agreed."[13] In federal court, however, the acceptance of a remittitur on one count of a complaint does not bar an appeal from an adverse judgment with respect to an entirely separate and distinct cause of action. Thus, the Fourth Circuit held in *Call Carl, Inc. v. BP Oil Corp.*[14] that a plaintiff might appeal a directed verdict entered against him on an antitrust count in spite of his acceptance of a remittitur on a fraud and deceit count.[15] Moore's Treatise states the slightly broader proposition that "[a] plaintiff may, however, appeal from other parts of the judgment."[16] Following this principle, the Seventh Circuit, in *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,*[17] permitted a plaintiff who had accepted a 50% remittitur on the award of damages to appeal the district court's denial of injunctive relief.

A cause of action for punitive damages is not, however, separate and distinct from the underlying claim for compensatory damages. Texas, like the majority of states, limits punitive damages to cases in which actual compensatory damages are found.[18] To recover punitive damages, the plaintiff would have to prove every element of her cause of action for medical malpractice and also prove malice or gross negligence.

■ The punitive damages claim is unlike the claim for equitable relief in *Ohio-Sealy Mattress Manufacturing Co.* which could be granted on the record before the appellate court. Nor is it like the distinct cause of action in *Call Carl* which could be separately tried. For these reasons, the Maryland Supreme Court concluded, in *Kneas v. Hecht Co.,*[19] that a claim for punitive damages was not a separate and distinct cause of action and refused to permit appeal of that question after acceptance of a remittitur. Although the *Kneas* court relied in part on the fact that the plaintiff had alleged only one cause of action in his complaint, while Lanier has pleaded multiple causes of action, the rationale of the case is applicable. Whether pleaded in a single count or separately, the punitive-damage claim is dependent on es-

**11.** Tex.R.Civ.P. 328 (1984).

**12.** *Donovan v. Penn Shipping Co., Inc.,* 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977).

**13.** *Id.* at 649, 97 S.Ct. at 836, 51 L.Ed.2d at 114. *See Keene v. Int'l Union of Operating Eng'rs,* 569 F.2d 1375, 1381 (5th Cir.1978) (this rule also applies to cross appeals).

**14.** 554 F.2d 623 (4th Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977).

**15.** *See* Plaintiff's Right to Appeal an Adverse Judgment on One Cause of Action as Affected by Acceptance of Remittitur on Another Cause of Action, 41 A.L.R.Fed. 856 (1979).

**16.** 6A J. Moore, Moore's Federal Practice ¶ 59.-08[7], at 59–205–06 (1984).

**17.** 585 F.2d 821 (7th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979).

**18.** Prosser & Keeton, The Law of Torts 14 (1984); *Mack v. Newton,* 737 F.2d 1343, 1363–64 (5th Cir.1984).

**19.** 257 Md. 121, 262 A.2d 518 (1970).

tablishing liability for compensatory damages and, in addition, establishing malice or some other aggravating circumstance. It cannot be tried in isolation, and remand of that claim would necessitate retrial of the entire case. Under these circumstances, acceptance of the remittitur must put an end to the litigation.

Lanier also asserts that it was error to dismiss the legal malpractice claim against Sallas. A legal malpractice action is essentially a negligence action, incorporating the elements of duty, breach of duty, injury, and causation.[20]

 Lanier's claim is based on documents that purport to show that Sallas was appointed attorney *ad litem* to represent her at a hearing on July 22, 1980. The judge who issued the order and presided at the hearing repeatedly insisted that the documents are incorrect and that Sallas was never appointed attorney *ad litem* to represent Lanier. In a prior deposition the judge did state that Sallas was present at the hearing but he subsequently denied the correctness of that statement. Sallas also denies that he was appointed attorney *ad litem*, that he was notified of such an appointment, or that he represented Lanier or was present at the hearing. The only indication that Sallas represented Lanier came in the testimony of an employee of the state hospital regarding a telephone conversation she and Lanier had with Sallas. The employee testified only that she "got no indication that [Sallas] was surprised" that he was being asked to represent Lanier when Lanier spoke with him on the phone. Lanier testified that she understood Sallas was to represent her at a hearing on August 6. Nothing in her testimony suggested that Sallas indicated to her that he was aware that he had been appointed to represent her at any earlier hearing. Further, Lanier indicated that, at the August 6 hearing, Chris Von Doenhoff was identified to her as her court-appointed attorney, and he was in fact appointed to represent her then.

The *Boeing Co.* standard[21] permits us to reverse the directed verdict only "if there is substantial evidence opposed to the motions, that is evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions." In this case, the evidence that pointed to the existence of an attorney-client relationship was not sufficient to meet this standard. Accordingly, the court's instructed verdict was proper.

For these reasons, the judgment is AFFIRMED.

---

**20.** *See Fireman's Fund American Ins. Co. v. Patterson & Lamberty, Inc.,* 528 S.W.2d 67, 69 (Tex. Civ.App.1975) (writ ref'd n.r.e.).

**21.** *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).