**LITTLE OIL COMPANY, INC., a Calif. corp.; Haber Oil Products, Inc., a Calif. corporation, d/b/a Ed Haber & Sons Petroleum, Plaintiffs–Counter–Defendants–Appellants/Cross–Appellees,**

v.

**ATLANTIC RICHFIELD COMPANY, a Penn. corp.,**
**Defendant–Counter–Claimant–Appellee/ Cross–Appellant.**

Nos. 87–6114, 87–6166 and 87–6456.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1988.

Decided July 19, 1988.

Cal., for defendant-counter-claimant-appellee/cross-appellant.

David Laufer, Lloyd K. Chapman, David Gurnick, Kindel & Anderson, Woodland Hills, Cal., for plaintiffs-counter-defendants-appellants/cross-appellees.

Donald G. Smaltz, Robert B. Miller, Robert L. Hess, and Leighton M. Anderson, Miller, Lewis & Bockius and Paul J. Richmond, Atlantic Richfield Co., Los Angeles,

Before GOODWIN, Chief Judge, and FLETCHER and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Little Oil Company, Inc. and Haber Oil Products were both franchise gasoline distributors for the Atlantic Richfield Company. In 1981 Little and Haber accepted new multi-year franchise agreements with ARCO. From 1973 through January 1981, federal regulations controlled gasoline price and allocation, preventing ARCO and other oil companies from making certain changes in their business and marketing practices, or restructuring the prices they charged to their various classes of customers. In January 1981, most of the regulations relating to the marketing of motor gasoline ended. Gasoline demand peaked in 1978, and by 1981 was steadily declining.

Beginning in 1981 ARCO instituted a number of marketing changes. ARCO: (1) eliminated its credit card program; (2) terminated hauling allowances [1]; (3) significantly reduced class of trade price differentials [2]; (4) refused to sell gasoline above the maximum quantities set forth in the franchise agreements; (5) eliminated Little's and Haber's line of credit; and (6) changed 10th and 30th prox payment terms [3] to receipt-of-invoice payment terms.

At trial Little and Haber argued that these marketing changes were prohibited by the terms of their franchise agreements and constituted "constructive termination" in violation of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ARCO counterclaimed seeking declaratory relief that the marketing changes were per-

---

1. A hauling allowance is a discount off the buying price of gasoline intended to reimburse distributors for transportation costs from ARCO's terminal to the distributor's bulk plant.

2. Under the class of trade price differentials ARCO sold gasoline to its distributors at a price less than ARCO charged its retail dealers.

3. Under 10th prox payment terms, ARCO permitted branded distributors to pay for gasoline purchases made in one month on or before the 10th day of the next month. Under 30th prox terms, a branded distributor would not have to pay until the 30th day of the following month.

mitted by the terms of the agreement, and did not constitute a termination of the franchise. Little's and Haber's claims were tried to the jury which found in favor of ARCO. ARCO's counterclaims were tried to the judge who also ruled for ARCO.

Little and Haber appeal. On cross-appeal, ARCO argues that the district court erred in failing to apply defensive collateral estoppel and in denying its motion to retax costs of preparing visual aids for trial. We affirm.

## I.

Little and Haber assign error to (1) the court's instructions to the jury regarding the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.*, and (2) the denial of its motion for a new trial.

In reviewing jury instructions to which timely objections have been made, we determine,

> whether, viewing the jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to ensure that the jury fully understood the issues. A court is not required to use the exact words proposed by a party, incorporate every proposition of law suggested by counsel or amplify an instruction if the instruction as given allowed the jury to determine intelligently the issues presented.

*Los Angeles Memorial Coliseum Comm'n. v. National Football League,* 726 F.2d 1381, 1398 (9th Cir.1984), *cert. denied,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984) (citations omitted).

The Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, prohibits the termination of a franchise except for reasons specifically enumerated in § 2802(b)(2) and upon proper notice. *Khorenian v. Union Oil Co. of California,* 761 F.2d 533, 535

(9th Cir.1985). The burden of proving termination is upon the franchisee. 15 U.S.C. § 2805(c). The franchisor then "bear[s] the burden of going forward with evidence to establish as an affirmative defense that such termination … was permitted." *Id.*

Little's and Haber's theory of the case was that the change in ARCO's marketing strategy constituted a "constructive" termination of their franchises. The district court specifically incorporated this theory. Nevertheless, Little and Haber challenge instructions which state (1) that "[a] franchisor … may initiate changes in its marketing activities to respond to changing market conditions or consumer preferences," and (2) that "[e]ach plaintiff has the burden of proving by a preponderance of the evidence that such changes, in marketing practices, were unduly burdensome and overbearing." They argue that the instructions impermissibly create a nonstatutory affirmative defense and erroneously shift the burden of proof regarding affirmative defenses to the plaintiff.

We have not yet decided what constitutes a "constructive" termination under the Petroleum Marketing Practices Act, or even whether a termination under the Act may occur "constructively." The Fourth Circuit found a "constructive" termination where a franchise was assigned invalidly under state law, and the assignment resulted in higher gasoline prices to the franchisee. *Barnes v. Gulf Oil Corp.,* 795 F.2d 358 (4th Cir.1986).[4] *Barnes* is distinguishable because of the assignment, which terminated the relationship between the original franchisor and the franchisee.[5] Despite the paucity of authority to support Little's and Haber's theory of the case, the district court adopted it and instructed the jury regarding "constructive" termination under the Act.

---

**4.** Other decisions have mentioned the possibility of "constructive" termination in *dicta. See e.g. Sexe v. Husky Oil Co.,* 475 F.Supp. 135, 137 (D.Mont.1979) (indicating that "constructive" termination would require a 99% reduction in allocation by the franchisor).

**5.** Furthermore, we have held that dismissal of a complaint that alleges franchise termination

due to the mere assignment of the lease and supply agreements, in the absence of allegations that any of the components of the franchise agreement (the contract to use the refiner's trademark, the contract for supply of motor fuel, and the lease of the premises) were breached, is proper. *Fresher v. Shell Oil Company,* 846 F.2d 45 (9th Cir.1988).

The district court's instructions that Little and Haber demonstrate that ARCO's marketing changes were "unduly burdensome and overbearing" makes obvious sense. If the changes were not "unduly burdensome and overbearing," no "constructive" termination could have occurred. Instructing the jury that ARCO may initiate changes in its marketing strategy in response to market conditions or consumer preferences is also appropriate. The legislative history of the Act recognizes the "importance of providing adequate flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences." S Rep. No. 731, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 873, 877; *see Valentine v. Mobil Oil Corp.*, 789 F.2d 1388, 1390 (9th Cir.1986) (act permits franchisors significant latitude in responding to changing market conditions). By including this instruction, the trial court ensured that ARCO would not be penalized for legitimate business practices which are not targeted by the Act.

■ We need not decide whether the Petroleum Marketing Practices Act applies to "constructive" terminations. If it does, the district court did not err in its instructions. The two challenged instructions neither create an affirmative defense nor incorrectly shift the burden of proof. Rather, they define the contours of Little's and Haber's initial burden under 15 U.S.C. § 2805(c) of proving that a "constructive" termination has occurred. If, however, the Act does not apply to "constructive" terminations of this sort, the jury's verdict in favor of ARCO renders the error harmless.

### II.

■ The trial court dismissed Little's and Haber's claims based on alleged violations of California Business & Professions Code § 17200 *et seq.* and § 17500 *et seq.* which create private rights of action for unfair business practices and false advertising. It held that no private right of action for damages exists under those stat-utes and that the claims for injunctive relief were moot.

In arguing an exception which permits business competitors to seek damages, Little and Haber rely primarily on the following language in *Committee on Children's Television, Inc. v. General Foods*, 35 Cal. 3d 197, 197 Cal.Rptr. 783, 673 P.2d 660 (1983): "We do not, however, decide whether a plaintiff other than a business competitor can recover damages on a cause of action based on the unfair competition or false advertising law." 197 Cal.Rptr. at 794, 673 P.2d at 671. They rely too heavily on too little. In *Chern v. Bank of America*, 15 Cal.3d 866, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976), the California Supreme Court held that § 17535 "do[es] not authorize recovery of damages by private individuals. Private relief is limited to the filing of actions for an injunction; ... and civil penalties are recoverable only by specified public officers...." 127 Cal.Rptr. at 115, 544 P.2d at 1315 (citations omitted). The *Chern* holding is equally applicable to § 17200. *Meta–Film Associates, Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1363 (C.D. Cal.1984). In light of the clear holding in *Chern* that damages are not available to private individuals, we reject Little's and Haber's interpretation of California law which is based on ambiguous language and *dicta* at best. *See also Kates v. Crocker National Bank*, 776 F.2d 1396, 1398 (9th Cir.1985) (citing *Chern*, 127 Cal.Rptr. at 115, 544 P.2d at 1315, for the proposition that California law does not recognize the recovery of damages by individuals for unfair business practices); *Meta–Film Associates*, 586 F.Supp. at 1363 (concluding that *Chern*, 127 Cal.Rptr. at 115, 544 P.2d at 1315, limits private individuals to injunctive relief).

### III.

■ On the grounds that his answers would involve ultimate facts and would not be helpful to the jury, the trial court precluded answers of Robert Taylor, Little's and Haber's expert witness, to three questions: (1) whether ARCO's marketing changes constituted a termination, (2)

whether the imposition of a volume restriction on one class of trade is burdensome and oppressive, and (3) whether the imposition of a limitation on a branded distributor class of trade is injurious to the health of that class.

A trial court has broad discretion in admitting or excluding expert testimony and will be sustained unless manifestly erroneous. *Taylor v. Burlington Northern R.R. Co.*, 787 F.2d 1309, 1315 (9th Cir.1986). Even if the court abused its discretion, the error is harmless in a civil action if the decision is more probably than not untainted by the error. *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 529 (9th Cir. 1986).

Fed.R.Evid. 704 states that expert testimony which is otherwise admissible "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Nevertheless, Rule 704 does not render all expert testimony admissible. Fed.R.Evid. 702 permits a qualified expert to testify in the form of an opinion or otherwise only if such testimony would assist the trier of fact to understand the evidence or determine a factual issue. *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir.1985). The test for admissibility is whether the jury will receive "appreciable help." *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987).

Little and Haber rely on *Shad*, 799 F.2d 525, to argue abuse of discretion. *Shad* is distinguishable. In *Shad*, the court was specifically determining the admissibility of expert opinion testimony in a "churning" case. Churning involves a complex securities scam. Further, in addition to ultimate facts, the jury was denied expert testimony regarding the underlying elements of the crime. *Id.* at 528. Where only ultimate facts are excluded, it is more likely that the excluded testimony will not be appreciably helpful. *See Arenal*, 768 F.2d at 269–70 (trial court abused its discretion in permitting expert to testify regarding ultimate facts because testimony did not meet helpfulness criterion of Rule 702).

Taylor's testimony totaled over 400 pages. In light of his extensive testimony, and based on *Arenal*, the trial court did not abuse its discretion in excluding Taylor's opinions. The ultimate facts in question do not meet the "appreciable help" test of Fed.R.Evid. 702. Taylor had already given the jury the facts it needed to draw its own conclusions regarding ARCO's marketing practices.

## IV.

■ At the close of Little's and Haber's evidence, the trial court directed a verdict in favor of ARCO on the claim that ARCO had tortiously breached the covenant of good faith and fair dealing. The court ruled as a matter of law that the "special relationship" necessary to prove such a tortious breach does not exist between a franchisor and franchisee.

California law implies a covenant of good faith and fair dealing in every contract. *Seaman's Direct Buying Serv., Inc. v. Standard Oil*, 36 Cal.3d 752, 206 Cal.Rptr. 354, 362, 686 P.2d 1158, 1166 (1984) (per curiam). In limited circumstances, where a "special relationship" exists between the parties to the contract, breach of this covenant will give rise to a cause of action in tort. *Wallis v. Superior Court*, 160 Cal. App.3d 1109, 207 Cal.Rptr. 123, 127–28 (1984). Originally, the doctrine was confined in large part to insurance contracts. *Id.* In *Seaman's*, the Court suggested that non-insurance contracts could be tortiously breached if they contained relationships with characteristics similar to those which allow a finding of tortious breach in an insurance contract. *Seaman's*, 206 Cal. Rptr. at 362–63, 686 P.2d at 1166–67.

In *Wallis* the court specifically listed those characteristics:

(1) the contract must be such that parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its ac-

tions, and (b) they do not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

Wallis, 207 Cal.Rptr. at 129.

The *Wallis* factors inherently require an examination of the facts surrounding the contract. The only *Wallis* factor that weighs in favor of Little and Haber is perhaps the first. We do not ignore the disparity between the bargaining power of gasoline refiners and franchise distributors, but more is required. It was absent here.

Little's and Haber's motivation for entering into the contract was profit. They argue that they accepted the franchise agreements to secure peace of mind regarding their supplies and businesses. Accepting this argument would mean that almost any commercial contract would comply with the second *Wallis* factor since a fundamental purpose behind most commercial contracts is to secure commercial stability. Little and Haber have not shown that ordinary contract damages are inadequate or that they suffer from the particular vulnerability referred to in factors four and five.

## V.

In their original complaint before California's Superior Court, Little and Haber made three claims against ARCO based on violations of California's Franchise Investment Law, Cal.Corp.Code §§ 31110, 31101. The first two claims sought declaratory judgment relief, as well as the remedies available under the Franchise Investment Law. The third claim sought rescission and damages.

The exclusive remedies available under California's Franchise Investment Law are damages and rescission. Cal.Corp.Code §§ 31300, 31306. The California Superior Court granted summary judgment regarding counts 1 and 2 because at argument Little and Haber waived the only remedies available under the law. After the case was removed to federal district court, Little and Haber reasserted the first three claims in their first amended complaint. The district court granted summary judgment on the first two counts in favor of ARCO based on the Superior Court's prior ruling and the doctrine of the case. The district court granted summary judgment on count 3 based on the rationale used by the superior court in disposing of counts 1 and 2 (that Little and Haber had waived the only remedies available under California's Franchise Investment Law).

Little and Haber contend that the federal district court erred regarding the first two claims. They argue that the superior court could prevent them from seeking damages in the state court suit but could not deny them the right to bring an action for damages in a later suit in federal court.

This argument fails. Little and Haber's complaint in California's Superior Court requested both declaratory relief, as well as other relief available under California's Franchise Investment Law. However, during oral argument Little and Haber waived any right to the exclusive damages permitted under the Franchise Investment Law. Because Little and Haber raised the claim for these remedies and then waived any right to them, the superior court properly granted summary judgment with regard to counts 1 and 2. Based on the law of the case doctrine, the federal district court also properly granted summary judgment when Little and Haber again raised counts 1 and 2 in their first amended complaint. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed. 2d 318 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

With regard to count 3, Little and Haber argue that the federal district court erred in granting summary judgment for ARCO because the state superior court had already ruled on a summary judgment motion preserving some issues for trial. They also argue that Haber could not have waived any rights with regard to counts 1,

2, and 3 because he was not a plaintiff when the waiver occurred.

■ The fact that ARCO unsuccessfully raised certain grounds for summary judgment on count 3 before the California Superior Court, does not mean that ARCO may not raise a new ground for summary judgment on that count before the federal district court. Further, as ARCO points out, Haber previously argued that its interests were represented in the original complaint under a "relation back" theory in order to defeat a statute of limitations defense by ARCO. Haber, therefore, is precluded from now arguing that the state court rulings are not binding on it.

## VI.

■ ARCO maintains that Little and Haber's challenge to its marketing changes was collaterally estopped by the prior judgment in *W & S, Inc. dba Triad Oil v. Atlantic Richfield Co.*, Bus. Franc. Guide (CCH) ¶ 8207 (N.D.Cal.1984). Collateral estoppel acts as a bar only if the issue decided in the prior case is identical to the issue raised in the later case. *Milens of California v. Richmond Redevelopment Agency*, 665 F.2d 906, 908 (9th Cir.1982). The issues are not identical. *Triad Oil* involved an actual, as opposed to a "constructive", termination. Triad Oil failed to meet its minimum gasoline purchase obligation. In response, ARCO terminated the franchise. Triad then argued that the termination was illegal because it was unable to meet its obligation due to marketing changes implemented by ARCO. Although the *Triad* court explicitly found that ARCO's changes in marketing practices did not constitute a termination of Triad's franchise, such a finding is necessarily based on the fact specific circumstances surrounding the Triad franchise. As such, the ruling cannot serve to collaterally estop a challenge to ARCO's marketing practices based on the alleged termination of entirely different franchises.

## VII.

Costs for items such as summaries, computations, charts, graphs, etc. are recoverable under 28 U.S.C. § 1920, and Local Rule 16.4.13(a) for the Central District of California. ARCO requested reimbursement in the amount of $33,112.95 for visual aids it prepared for trial. The district court denied the request. ARCO appeals.

■ The district court erroneously concluded that Local Rule 16.4.13(a) *requires* a court order permitting taxation prior to the incurrence of any expense which a party's opponent may be asked to pay. A prior court order is required only for taxation of the costs of models. Local Rule 16.4.13(c). Nevertheless, the Local Rule,[6] as well as 28 U.S.C. § 1920,[7] permits the district court to exercise its discretion. *See* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.71[1] at 54–357 (2d ed. 1988) ("The court in exercise of a sound discretion may decline to tax as costs items listed in [§ 1920]."). When the costs incurred for such items are significant or unusual, a court may properly conclude, in its sound discretion, that in the interests of equity and fairness the party controlling expenditures should seek the court's approval prior to incurring the expenses. *See* 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2677 at 368–69 (2d ed. 1983); 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.77[6] at 54–459 to –460 (2d ed. 1987). Because the district court also based its ruling on the exercise of its discretion, we need not remand for clarification.

AFFIRMED.

6. Local Rule 16.4.13 for the Central District of California states: "Upon order of the Court, the following items *may* be taxed as costs ..." (emphasis added).

7. 28 U.S.C. § 1920 states: "A judge or clerk of any court of the United States *may* tax as costs ..." (emphasis added).