Richard A. DENHOLM,
Plaintiff–Appellant,

v.

HOUGHTON MIFFLIN COMPANY and
the Riverside Publishing Company,
Defendants–Appellees.

No. 87–5987.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1989.

Decided Aug. 27, 1990.

Stanley Sklute, Gerald Goldfarb, Los Angeles, Cal., for plaintiff-appellant.

Michael H. Diamond, Harriet S. Posner, Laura R. Medinnus, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, Cal., for defendants-appellees.

Before TANG, HALL and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Plaintiff–Appellant Richard Denholm ("Denholm") sued his publisher, Houghton Mifflin Co. ("Houghton Mifflin"), and its wholly-owned subsidiary, Riverside Publishing Co. ("Riverside") (collectively "Defendants–Appellees"), in Los Angeles Superior Court for tortious breach of contract and fraud arising out of a Letter Agreement to develop and publish a mathematics program for kindergarten through eighth grade. Appellees properly removed the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1441 & 1446, which had proper diversity jurisdiction under 28 U.S.C. § 1332(a).

The district court dismissed the fraud claim on judgment on the pleadings, as it was filed beyond the applicable three-year California statute of limitations for fraud claims. Cal.Civ.Proc.Code § 338(4). The court later dismissed the tortious breach of contract claim on summary judgment, as the parties did not have a special relationship as required by California law. However, the court allowed Denholm to proceed on an amended complaint alleging ordinary breach of contract claim.

Prior to trial, the court granted appellees' motion *in limine,* excluding the presentation of evidence by Denholm of damages from lost royalties and loss of reputa-

tion. Thus, at trial the only evidence of damages presented was Denholm's testimony as to the reasonable value of the time he had devoted to the project—$20,000. The jury returned a judgment on the verdict in favor of Denholm, awarding him $100,000, which was reduced on appellees' motion for a remittitur to $20,000. Denholm accepted the remittitur. The court issued an amended judgment vacating the judgment on the verdict and awarding Denholm $20,000 in accordance with the accepted remittitur.

██ Denholm timely appeals (1) the amended judgment; (2) the judgment on the verdict; (3) the pretrial order excluding evidence of damages for lost royalties and loss of reputation; (4) the summary judgment dismissal of the tortious breach of contract claim; and (5) the judgment on the pleadings dismissal of the fraud claim.[1] Defendants–Appellees have moved for dismissal of the appeal based on Denholm's acceptance of the remittitur, relying on *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977).

Because *Donovan* bars the appeal of a remittitur order that a plaintiff has accepted, we dismiss Denholm's appeal as to the amended judgment, the judgment on the verdict, and the pretrial order excluding evidence of damage for lost royalties and loss of reputation. Regarding Denholm's remaining points of appeal, we affirm the district court's dismissal of both the tortious breach of contract claim and the fraud claim.

I

ACCEPTANCE OF REMITTITUR

██ In *Donovan* the Supreme Court reaffirmed "the longstanding rule that a plaintiff in federal court, whether prosecuting a state or federal cause of action, may not appeal from a remittitur order he has accepted." *Donovan*, 429 U.S. at 650, 97 S.Ct. at 837. However, *Donovan* only applies to an appeal attacking the correctness of the remittitur order, as a plaintiff may appeal from other parts of the judgment. 6A J. Moore & J. Lucas, *Moore's Federal Practice,* ¶ 59.08[7], at 59–204 to –205 (2d ed. 1989). Determining what constitutes a part of the remittitur or another part of the judgment is a question of federal law, even in a diversity case, and state practices are not relevant. *Donovan*, 429 U.S. at 649, 97 S.Ct. at 836; *Lanier v. Sallas*, 777 F.2d 321, 325 (5th Cir.1985).

In *Lanier* the Fifth Circuit recently addressed the *Donovan* decision. A plaintiff had won a $100,000 verdict on a medical malpractice claim, but accepted a remittitur reducing the award to $50,000 rather than undergo a new trial. *Lanier*, 777 F.2d at 322. However, she then appealed the district court's refusal to submit her punitive damages claim to the jury. *Id.* The Fifth Circuit found that the punitive damages and compensatory damages claims were "inextricably intertwined" and held that the acceptance of the remittitur barred the appeal of the court's action regarding the punitive damages claim. *Id.*

In its analysis the *Lanier* court specifically ruled that under *Donovan* "the acceptance of a remittitur on one count of a complaint does not bar an appeal from an adverse judgment with respect to an entirely *separate and distinct* cause of action." *Id.* at 325 (emphasis added).[2] The court

---

1. Although Denholm's notice of appeal did not list his appeal of the dismissal of the fraud claim, such a mistake is not fatal "'as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced or misled by the mistake.'" *McCarthy v. Mayo*, 827 F.2d 1310, 1314 (9th Cir.1987) (quoting *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 451 (9th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984)) (citation omitted). It can reasonably be inferred that the notice of appeal intended to appeal all of the district court's rulings. As appellees fully briefed the issue, they suffered

no prejudice and were not misled. Thus, we will consider Denholm's appeal of this issue.

2. The Fourth Circuit also has recognized and applied a "separate and distinct" test. *See Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 625–27 (4th Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977) (directed verdict on an antitrust count is appealable notwithstanding acceptance of a remittitur on a fraud and deceit count: "[T]he reasons for prohibiting direct appeals from remittiturs [do not] require such a result with respect to entirely *separate and distinct* causes of action once a remittitur has been

then ruled that "[a] cause of action for punitive damages is *not ... separate and distinct* from the underlying claim for compensatory damages." *Id.* (emphasis added). The court further noted that unlike the antitrust and fraud and deceit counts in *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 625–27 (4th Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977), the punitive damages claim was not distinct and could not be separately tried from the already tried compensatory damages claim. *Lanier,* 777 F.2d at 325–26. Rather, it was dependent on establishing liability for compensatory damages, as well as establishing malice or some other aggravating circumstance. *Id.* Therefore, remand of the punitive damages issue would necessitate retrial of the entire case, and under such circumstances, "acceptance of the remittitur must put an end to the litigation." *Id.* at 326.[3]

We agree with the Fifth Circuit's analysis and adopt the "separate and distinct" test enunciated in *Lanier.* Thus, in the present case we must analyze whether each issue on appeal is a separate and distinct cause of action from the subject of the remittitur.

■ *Donovan* clearly controls Denholm's first and second points of appeal, the amended judgment and the judgment on the verdict. The amended judgment is neither a separate nor distinct cause of

action from the remittitur because it is the very subject of the remittitur, the ordinary breach of contract claim. The judgment on the verdict, like the amended judgment, is also neither a separate nor distinct cause of action; it also directly relates to the ordinary breach of contract claim. Because Denholm does not dispute his acceptance of the remittitur, he consented to the amended judgment and the vacating of the judgment on the verdict. Although Denholm strenuously argues that he reserved his right to appeal when he accepted the remittitur, such protestations are not relevant. *Donovan,* 429 U.S. at 649, 97 S.Ct. at 836. Thus, under *Donovan,* he effectively waived his right to appeal either judgment. Therefore, we dismiss his first and second points of appeal.

The remittitur also covers Denholm's third point of appeal, the pretrial order excluding presentation of evidence of damages from lost royalties and loss of reputation. Denholm's amended complaint stated a single breach of contract claim and sought only one type of damages: compensatory damages. Although he attempted to present evidence of lost royalties and loss of reputation, which was rejected by the court, as well as the reasonable value of his time devoted to the project, which was admitted, all of this evidence relates to his single breach of contract claim for compensatory damages, which was resolved by remittitur.[4] The evidence of lost royalties

---

accepted on one count of a complaint." *Id.* at 627 (emphasis added)). *See also Aaro, Inc. v. Daewoo Int'l (Am.) Corp.,* 755 F.2d 1398, 1400–01 (11th Cir.1985) (prior summary judgment on commissions from unshipped orders appealable notwithstanding acceptance of remittitur regarding tried claim on commissions from shipped orders: "[P]laintiffs appeal from ... an order completely unrelated to the remittitur order. Hence, the instant case is not governed by *Donovan,* and the plaintiffs' appeal is proper." *Id.* at 1401 (footnote and citations omitted)).

3. While we are mindful that the *Lanier* court did briefly discuss *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 585 F.2d 821 (7th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), as noted by the dissent, *see* dissent at 363, it endorsed and applied the "separate and distinct" test, focusing upon the inextricable intertwining of the two claims. *See supra* accompanying text; *Lanier,* 777 F.2d at 322, 325–26.

4. The actual language of the court's remittitur order specifically provided that "defendants' motion for a remittitur should be, and the same hereby is, granted and defendants are awarded a new trial on the *issue of damages,* unless plaintiff accepts a remittitur of the verdict and judgment." (emphasis added). This order, which addresses the trial and verdict on the single breach of contract compensatory damages claim in the complaint, necessarily encompasses all compensatory damage issues, including loss of royalties and loss of reputation.

We are unpersuaded by the dissent's position that the present case more closely resembles *Sealy* than *Lanier. See* dissent at 364. *Sealy* involved separate claims for both declaratory and injunctive relief, while *Lanier* involved a single claim and two interrelated measures of damages—compensatory and punitive. As in *Lanier,* the present case involves a single claim. While the dissent correctly notes that the excluded evidence of lost royalties and loss of

and loss of reputation is therefore not separate and distinct from the already litigated breach of contract claim for compensatory damages and, under such circumstances, acceptance of the remittitur must put an end to the litigation of this claim. *See Lanier*, 777 F.2d at 326.[5] We therefore dismiss Denholm's third point of appeal.

■ However, we do not believe that the remittitur covers Denholm's final two points of appeal, the dismissals of the tortious breach of contract and fraud claims. Upon review of the procedural history of this case, we find both dismissed claims to be separate and distinct from the ordinary breach of contract claim resolved by the remittitur. The court dismissed both of these claims prior to the filing of the ordinary breach of contract claim. Moreover, these claims require different evidentiary showings from the ordinary breach of contract claim. Therefore, Denholm's appeal of the order dismissing the tortious breach of contract claim and his appeal of the order dismissing the fraud claim are properly before this court.

## II

### SUMMARY JUDGMENT—TORTIOUS BREACH OF CONTRACT

■ Under California law, tort recovery for a breach of the covenant of good faith and fair dealing requires proof of a special relationship between the parties. *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 768–69, 206 Cal.Rptr. 354, 362, 686 P.2d 1158, 1166 (1984); *Wallis v. Superior Court*, 160 Cal. App.3d 1109, 1116–18, 207 Cal.Rptr. 123, 127–29 (1984); *Eichman v. Fotomat Corp.*,

880 F.2d 149, 169 (9th Cir.1989); *Little Oil Co. v. Atlantic Richfield Co.*, 852 F.2d 441, 446 (9th Cir.1988). *See also Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 653, 254 Cal.Rptr. 211, 230, 765 P.2d 373, 392 (1988).

The characteristics of such a special relationship are:

(1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

*Wallis*, 160 Cal.App.3d at 1118, 207 Cal. Rptr. at 129. *See Eichman*, 880 F.2d at 169 (quoting *Wallis*); *Little Oil*, 852 F.2d at 446–47 (quoting *Wallis*).

■ The relationship in the instant case fails to meet any of the five criteria. Denholm and his publishers were of equal bargaining stature, as Denholm had been active in publishing for over twenty years and had published more than forty textbooks as of 1985. The months of negotiation required to reach the Letter Agreement further illustrate the parties' equality. That both parties entered the relationship for profit is beyond dispute. Furthermore, Denholm offers no evidence as to the inadequacy of ordinary contract damages, nor has he shown he is in any way vulnera-

reputation concerns separate measures of damages from the admitted evidence of the reasonable value of expended time, *id.*, all of this evidence is directly related to the litigated breach of contract claim resolved by the accepted remittitur.

5. As the dissent notes, Denholm could have appealed the court's exclusion of evidence regarding lost royalties and loss of reputation if he had refused to accept the remittitur and, following the ensuing second trial, appealed the issue.

*See* dissent at 365–366. However, he knowingly chose to accept the remittitur, waiving his right to later appeal, and is bound by that decision.

While the dissent believes that this procedure is "a waste of time, money, judicial resources, and a disincentive to acceptance of remittitur," *see* dissent at 366, the permissibility of the "either remittitur or new trial" decision has been uniformly accepted. *See Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935); *see also*, 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2815, at 100–103 (1973).

ble or of necessity placed any trust in his publishers. We find no evidence of a special relationship as required under California law and affirm the district court's dismissal of the tortious breach of contract claim.

### III

### JUDGMENT ON THE PLEADINGS— FRAUD

Our review of the district court's judgment on the pleadings dismissing the fraud claim is properly limited to the contents of the complaint; we must accept all allegations of fact as true and resolve all doubts in favor of the pleader. *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 647 (9th Cir.1981), *cert. denied*, 469 U.S. 1229, 105 S.Ct. 1230, 84 L.Ed.2d 368 (1985).

■ Under California law, fraud claims have a three year statute of limitations. Cal.Civ.Proc.Code § 338(4). A plaintiff on a fraud claim brought over three years after the commission of the fraud must "affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Hobart v. Hobart Estate Co.*, 26 Cal.2d 412, 437, 159 P.2d 958, 972 (1945) (citations omitted).

Such affirmation must be in the complaint. *Silver v. Watson*, 26 Cal.App.3d 905, 911, 103 Cal.Rptr. 576, 580 (1972) ("To obtain the benefit of the late-discovery exception to the statute of limitations, the *complaint* must allege facts showing that the cause of action could not with reasonable diligence have been discovered prior to three years before the suit." (citations omitted) (emphasis added)); *Holder v. Home Savings & Loan Ass'n*, 267 Cal. App.2d 91, 110, 72 Cal.Rptr. 704, 717 (1968) ("[I]t is imperative that the plaintiff plead *in his complaint* facts showing the time and manner of the discovery of the fraud, and the facts which excuse the plaintiff's failure to discover the fraud sooner." (emphasis added)).

This rule is strictly adhered to and has resulted in the dismissal of poorly pleaded fraud claims. *See, e.g., Orange County Rock v. Cook Bros. Equip. Co.*, 246 Cal. App.2d 698, 703, 55 Cal.Rptr. 265, 268 (1966) (" 'Formal averments or general conclusions to the effect that the facts were not discovered until a stated date, and that the plaintiff could not reasonably have made an earlier discovery, are useless.' " (quoting *Allen v. Ramsay*, 179 Cal.App.2d 843, 851, 4 Cal.Rptr. 575, 581 (1960), quoting II Witkin, *California Procedure* 1465)); *Jackson v. Master Holding Corp.*, 16 Cal.2d 824, 828, 108 P.2d 673, 675 (1940) ("[E]ven under the most liberal relaxation of the rule [where] there is no showing of any inquiry at all, and no explanation is offered for the failure to make it except the vague averment that the facts were 'concealed' ... [t]he pleading simply fails to meet the minimum requirements of a complaint for fraud which is filed more than three years after its commission.").

■ Denholm filed his complaint, which included the fraud claim, in April, 1985, almost five years after the commission of the June 26, 1980 alleged fraud, and almost two years after the expiration of the three year statute of limitations. In the fraud claim, he merely alleges:

Plaintiff discovered the fraud in March, 1984 when he learned that Defendants published a new mathematics program employing different authors. Prior to March, 1984, Plaintiff had no reason to suspect that Defendants would not employ him as promised.

Denholm thus did not affirmatively allege facts in his complaint showing that he was not negligent in failing to make discovery sooner as required by California law to excuse lateness of filing, nor did he affirmatively establish facts in his complaint that he was not on inquiry notice. Although Denholm contends that extrinsic evidence, a February, 1983, letter shows proof of concealment, our review is properly limited to the contents of the complaint, *Portland Retail Druggists*, 662 F.2d at 647, which

alleges no such concealment. Therefore, we affirm the district court's dismissal of the fraud claim.

Costs on appeal awarded to Houghton Mifflin and Riverside, defendants-appellees.

DISMISSED IN PART, AFFIRMED IN PART.

CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting in part:

Although I concur in Parts II and III of the majority opinion as well as much of Part I, I must dissent from the conclusion in Part I that Denholm may not appeal the pretrial order excluding evidence regarding lost royalties and loss of reputation because he accepted remittitur. The majority today adopts a sweeping and unnecessarily mechanistic view of which issues on appeal are sufficiently related to a remittitur order to trigger application of the longstanding rule that a plaintiff in federal court who accepts an order of remittitur may not appeal that order. *See Donovan v. Penn Shipping Co.*, 429 U.S. 648, 650, 97 S.Ct. 835, 837, 51 L.Ed.2d 112 (1977) (per curiam). Persuaded by the Fifth Circuit's decision in *Lanier v. Sallas*, 777 F.2d 321, 325 (5th Cir.1985), the majority opinion embraces an analysis that focuses on "whether each issue on appeal is a *separate and distinct cause of action* from the subject of the remittitur." Majority Opinion at 360 (emphasis added). Unfortunately, this analysis oversimplifies both the *Lanier* decision and the nature of the events which occurred below in the instant case, leading to an absurd result.

**I**

Contrary to what the majority implies, the Fifth Circuit in *Lanier* never stated that *only* "separate and distinct cause[s] of action" from the subject matter of a remittitur order may be appealed. Instead, the Fifth Circuit began its analysis with the uncontroversial proposition that in spite of a plaintiff's acceptance of remittitur on one cause of action, he *may* appeal the district court's ruling on a separate and distinct cause of action. *See id.* at 325.[1] The court then proceeded to acknowledge "the slightly broader proposition that '[a] plaintiff may, however, appeal from other parts of the judgment,'" *id.* (quoting 6A J. Moore, *Moore's Federal Practice* ¶ 59.08[7], at 59–205 to 206 (1984)), without stating which formulation was preferable. Indeed, the *Lanier* court cited *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), as an example of the "broader proposition" regarding appealability, and then proceeded to distinguish rather than criticize it. *Lanier* thus cannot be read as establishing the appealability *only* of "separate and distinct cause[s] of action."

*Lanier* acknowledged with apparent approval that the *Sealy* court "permitted a plaintiff who had accepted a 50% remittitur on the award of damages to appeal the district court's denial of injunctive relief." 777 F.2d at 325. Thus, the situation in *Sealy* was similar to the situation in the instant case in that both involve a plaintiff suing on a single cause of action yet seeking two types, or measures, of damages.[2]

The same could be said, of course, of the situation in *Lanier* itself, where a plaintiff suing on a legal malpractice theory sought

1. Indeed, a narrow reading of *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 627 (4th Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977), reveals that the Fourth Circuit, presented squarely with an attempted appeal concerning an entirely separate cause of action (antitrust) from the cause of action which was the subject of the remittitur order (fraud and deceit), simply held that such an appeal was permissible. The court did *not* state that *only* separate causes of action would suffice.

2. The majority relies on the fact that Denholm's complaint sought generic breach of contract compensatory damages. Majority Opinion at 360. But such reliance amounts to pointless formalism and in the end proves nothing. For even if Denholm could only be properly said to have sought one type of damages, a review of the record makes it abundantly clear that the district court treated various categories of evidence on this "single" damage claim differently. This is all that should matter under the functional analysis I propose. *See infra* part II.

both compensatory and punitive damages. Yet this only means that the *Lanier* court did a rather poor job of distinguishing *Sealy*. The *Lanier* court stated that whereas in *Sealy* the question of injunctive relief on an antitrust theory could be decided separately from the question of damages on the same theory, the question of punitive damages could not be tried separately from the question of actual damages. *Id.* at 325. The *Lanier* court's conclusion was grounded on the fact that "the punitive-damage claim is dependent on establishing liability for compensatory damages and, in addition, establishing malice or some other aggravating circumstance." *Id.* at 325–26. From this the court concluded that the punitive damages claim "cannot be tried in isolation, and remand of that claim would necessitate retrial of the entire case." *Id.* at 326. Yet if this is so, then why can the issue of injunctive relief be decided apart from the issue of compensatory damages, since both require an initial finding of liability?[3] Surely the *Sealy* court was correct in starting with the given of antitrust liability. The *Lanier* court, by contrast, never explained why a jury would be unable to decide a claim for punitive damages in isolation, starting with an instruction to the effect that actual damages have already been found and hence the jury's only inquiry is to consider the possibility of malice.

In any event, *Sealy* is much closer to the instant case than *Lanier* is. For both *Sealy* and this case concern a single theory of liability with two separate measures of damages, either of which can be awarded without regard to whether the other is awarded. *Lanier*, by contrast, concerns a single theory of liability with two interrelated measures of damages, one of which cannot be awarded unless the other is first awarded.

Perhaps the difference, is there is one, between *Lanier* and *Sealy* is that in *Lani-* er the evidence that would be presented in a claim for punitive damages would necessarily consist of largely the same evidence that had already been considered with regard to actual damages, whereas the important factors in a claim for injunctive relief in *Sealy* would have to go much further, encompassing traditional equitable considerations. Houghton Mifflin's attorney focused on this difference at oral argument; she explained *Lanier* as establishing that when consideration of an issue will require presentation of the same evidence that was considered in the issue that was the subject of the remittitur order, the new issue cannot be appealed.[4] But even if this reading of *Lanier* is correct, surely this case more closely resembles *Sealy* than it does *Lanier*, for Denholm is seeking to introduce entirely new evidence about royalties and reputation. He is not, as was the case with the appellant in *Lanier*, attempting to have the jury draw inferences of malice from the very same evidence that was considered in the action for compensatory damages.

## II

Once the majority's misguided reliance on *Lanier* is placed to one side, it is easy to see why the "separate and distinct cause of action" requirement works a pointlessly harsh result. The district judge in this case granted appellees' motion *in limine* to exclude the presentation of Denholm's evidence concerning damages from lost royalties and loss of reputation. At trial, Denholm made an offer of proof regarding lost royalty income, which the judge denied. At this point the judge specifically informed the jury that evidence of lost royalties or lost reputation would not be admitted. The judge's jury instructions also admonished the jury not to award damages for potential lost royalties. The only evidence actually presented at trial of Denholm's damages was testimony to the ef-

---

3. Admittedly, section 16 of the Clayton Act, which covers injunctive relief, only requires impending, as opposed to actual, antitrust injury; yet the *Sealy* court, *see* 585 F.2d at 844, inferred from the jury's damages verdict that an actual antitrust violation had already occurred.

4. Significantly, appellee's counsel never referred to *Lanier* as establishing an absolute rule requiring "separate and distinct cause[s] of action."

fect that the value of the time Denholm had devoted to the project was $20,000. Nonetheless, the jury awarded Denholm $100,000, an amount that the district court reduced on appellees' motion for remittitur to $20,000.

Surely the jury erred, since it had not been presented with any evidence whatsoever regarding Denholm's damages apart from the testimony regarding $20,000. Yet I fail to see how the majority can fairly characterize the *in limine* motion as directly related to the remittitur order accepted by Denholm. Although the remittitur order awarded a new trial generally "on the issue of damages[ ] unless plaintiff accepts a remittitur of the verdict and judgment," only by wilfully blinding itself to context can the majority disclaim that this order necessarily referred only to what had been presented at trial: damages for the value of Denholm's time spent preparing his book series. The subject of the *in limine* order—whether Denholm could collect damages for lost royalties and loss of reputation—involved the same underlying breach of contract cause of action that the jury ultimately was called upon to decide, but it obviously represented an entirely different measure of damages from the reasonable-value-of-time-spent measure submitted to the jury at trial. Consequently, Judge Hauk's remittitur order represented a decision that the jury's verdict did not conform to the evidence introduced at trial regarding the value of Denholm's time; it did *not* decide anew whether lost royalties and/or loss of reputation damages were awardable.[5]

In short, the remittitur order concerned a breach of contract trial whose parameters were strictly limited on the question of damages to the reasonable value of plaintiff's time spent on the project. As such, the trial necessarily decided only two things: 1) defendants had breached their contract with Denholm; and 2) the value of Denholm's time spent on the project was $100,000. The court's remittitur order, by reducing the $100,000 to $20,000, itself necessarily also addressed only the value of Denholm's time. The order had nothing to do with lost royalty or loss of reputation damages.[6] By concluding otherwise simply because the remittitur order was broadly worded, the majority inexplicably ignores the circumstances that led to the issuance of the order.

The majority posits a bright-line rule which is easily applied. Unfortunately, this is about all that the rule has to recommend itself. For it leaves no way for Denholm to appeal the district court's grant of the *in limine* motion in a reasonable amount of time. In the typical remittitur situation, the plaintiff has the option of having a second trial, where he may presumably offer better witnesses and more convincing evidence and hence win a favorable jury verdict that the court will not disturb. At the very least, the possibility looms that while the second jury might award an amount identical to that awarded by the first jury based upon similar evidence, the court might at that point take pause and allow the award to stand. But in the instant case, the judge made a pretrial decision to exclude certain types of evidence. It is obvious that he would exclude the identical evidence at a retrial. Thus, under the "separate and distinct cause of action" rule, the only way for an

---

**5.** The judge admonished the jury that it not award such damages, and indeed no evidence was admitted during trial regarding lost royalties and loss of reputation. These facts affirmatively rebut any assumption that the jury considered improper measures of damages. We can thus only infer that the jury miscalculated the value of the time Denholm spent developing the mathematics program. Even if the jury disobeyed the judge and implicitly awarded damages for lost royalties and/or loss of reputation in its verdict, the remittitur order did not decide that such damages could not be awarded; instead, the order at most reflected the earlier,

pretrial decision that such damages could not be awarded.

**6.** The situation in this case is to be contrasted with a situation in which a plaintiff is allowed to introduce evidence at trial to prove lost royalty or loss of reputation damages yet thereafter accepts remittitur. In such a situation, the remittitur order obviously covers the entire cause of action. Here, by contrast, the *in limine* order removed certain damages from consideration before the trial started.

appellant like Denholm ever to obtain appellate review of the initial *in limine* order would be to suffer through a second trial that he knows will not help him obtain recovery for the only real damages he has ever alleged, and *then* appeal.[7] This strikes me as a waste of time, money, judicial resources, and a disincentive to acceptance of remittitur. *Cf. Aaro, Inc. v. Daewoo Int'l (Am.) Corp.*, 755 F.2d 1398, 1401 n. 6 (11th Cir.1985). Denholm does not argue here that the reasonable value of the time that he devoted to the mathematics project should properly exceed $20,000. Instead, he argues the separate issue that he was unable to present evidence to the jury concerning lost royalties and reputation damage.

I would adopt the view that plaintiffs may appeal from "an order completely unrelated to the remittitur order," *id.* at 1401, in a functional sense; *see* 6A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 59.08[7], at 59–204 to –205 (2d ed. 1989) (although "a plaintiff in federal court may not appeal from a remittitur order he has accepted," he may "appeal from *other parts* of the judgment.") (emphasis added). Consequently, I would allow Denholm to appeal the ruling on the *in limine* motion.

---

**7.** Actually, the plaintiff may first seek review of the district court's order granting a new trial. *See Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1451 (9th Cir.1988). Yet in determining whether the district court abused its discretion by ordering a new trial, we would surely be unable to review the propriety of the initial grant of the *in limine* motion, unless the district court granted a new trial expressly on the basis that it erred in granting the *in limine* motion in the first place. *See id.* at 1451–52. For we would review the grant of a motion for a new trial for " 'abuse of discretion as to each ground *upon which the court based its determination.*' " *Id.* at 1452 (quoting *Peacock v. Board of Regents, Etc.*, 597 F.2d 163, 165 (9th Cir.1979)) (emphasis added). And in the case now before us it is certain that the district court threatened to grant the motion for a new trial solely because the jury's verdict on damages for the value of Denholm's time did not comport with the evidence presented at trial.