[Civ. No. 38615. Second Dist., Div. Four. July 26, 1972.]

PHILL SILVER, Plaintiff and Appellant, v.
PHILIP E. WATSON, as County Assessor, etc., et al.,
Defendants and Respondents.

[Civ. No. 39051. Second Dist., Div. Four. July 26, 1972.]

PHILL SILVER, Plaintiff and Appellant, v.
J. J. NEWBERRY CO., Defendant and Respondent.

**COUNSEL**

Phill Silver, in pro. per., for Plaintiff and Appellant.

John D. Maharg, County Counsel, DeWitt W. Clinton, Deputy County Counsel, Robert E. Brimberry, Frederick J. Lower, Jr., Paul, Hastings, Janofsky & Walker, Oliver F. Green, Jr., and Geoffrey L. Thomas, Leslie, Rubin & Teplin and Lawrence Teplin for Defendants and Respondents.

**OPINION**

**FILES, P. J.**—This action was brought by Phill Silver as a taxpayer of the County of Los Angeles to recover on behalf of the county the taxes on certain business personal property which allegedly should have been paid for the years 1961 and 1962. The defendants include Philip E. Watson, the county assessor, The Travelers Indemnity Company, who gave bond

for the assessor's faithful performance, Pete Summers, an alleged conspirator, and J. J. Newberry Co., the property owner who allegedly escaped the tax. The trial court sustained demurrers to the second amended complaint without leave to amend, and the action was dismissed as to those defendants. Plaintiff is appealing from the judgments.

The complaint is in three counts, but all are based upon the same facts. It is alleged that in the years 1961 and 1962 J. J. Newberry Co. underreported personal property owned by it in Los Angeles County, thereby escaping a substantial amount of property tax. It is alleged that when this came to the attention of Assessor Watson, he accepted a bribe paid by Newberry, with the aid of Summers, in consideration for which Watson permitted Newberry to escape a proper assessment.

On November 30, 1966, the Los Angeles County Grand Jury indicted Watson and others for conspiracy and bribery for their alleged conduct in connection with the Newberry assessment. The superior court dismissed all except one conspiracy count. The People appealed from the dismissal and a trial was held on the remaining count. On May 4, 1967, the trial ended with a directed verdict of not guilty. On July 24, 1967, the People's appeal with respect to the other counts was dismissed pursuant to stipulation, and remittitur issued that day.

On December 4, 1966, plaintiff wrote a letter to the county board of supervisors calling attention to the indictment and demanding that the supervisors take steps to see that a proper tax was collected from Newberry. Thereupon Harold W. Kennedy, county counsel, sent a letter to Evelle J. Younger, district attorney, inquiring whether an attempt at that time to proceed against Newberry might "impinge upon the trial of the indictments." Mr. Younger replied by a letter dated December 30, 1966, that both he and the Attorney General were of the opinion that "There can only be a harmful effect resulting from any attempt to perform an audit or additional investigation relating to the subject matter of our criminal prosecution during the pendency of those proceedings."

Thereupon Mr. Kennedy requested plaintiff to withhold any action against Philip E. Watson and plaintiff did agree to withhold the filing of the action "until determination of the criminal action then pending."

The complaint also alleges "That at all times thereafter to this date, the Board of Supervisors believed that as a result of the acquittal of the defendant Watson, that the County of Los Angeles had no cause of action against . . . defendants herein." Plaintiff alleges that he also believed that "for some time" after the acquittal.

This action was filed June 1, 1970, against Watson and Travelers. It

was not until the second amended complaint was filed on October 30, 1970, that Newberry was made a party to the action.

■ In passing upon the sufficiency of the complaint the trial court, and this reviewing court, are required to assume the truth of all matters of fact alleged, to determine whether or not such allegations, if proven, would entitle plaintiff to some relief. ■ We have concluded that the demurrers were properly sustained both because plaintiff fails to state facts sufficient to justify a taxpayer's suit, and because the action is barred by limitations.

*Justification for a taxpayer's suit.*

This complaint purports to state a cause of action belonging to the county. Plaintiff Silver purports to represent the county because its governing body, the board of supervisors, has failed to act. Silver does not claim to have any cause of action for a recovery on his individual behalf. In such an action, the county should have been made a party, but this is an error which the trial court could have corrected by ordering the county joined. (See *Osburn* v. *Stone* (1915) 170 Cal. 480, 483 [150 P. 367]; Code Civ. Proc., § 389; 3 Witkin, Cal. Procedure (2d ed. 1970) § 1823.)

■ A taxpayer may not bring an action on behalf of a public agency unless the governing body has a duty to act, and has refused to do so. If the governing body has discretion in the matter, the taxpayer may not interfere. (*Dunn* v. *Long Beach Land & Water Co.* (1896) 114 Cal. 605 [46 P. 607]; *Whitson* v. *City of Long Beach* (1962) 200 Cal.App.2d 486, 506 [19 Cal.Rptr. 668]; *Elliott* v. *Superior Court* (1960) 180 Cal.App.2d 894, 897 [5 Cal.Rptr. 116].)

The rule is explained in the *Dunn* case thus, at page 609: "The rule is that the municipality, through its governing body, has control of the property and general supervision over the ordinary business of the corporation; and there would be utter confusion in such matters if every citizen and taxpayer had the general right to control the judgment of such body, or usurp the office. Where the thing in question is within the discretion of such body to do or not to do, the general rule is that then neither by *mandamus, quo warranto,* or other judicial proceeding, can either the state or a private citizen question the action or nonaction of such body; nor in such cases can a private citizen rightfully undertake to do that which he thinks such body ought to do. It is only where performance of the thing requested is enjoined as a duty upon said governing body that such performance can be compelled, or that a private citizen can step into the place of such body and himself perform it."

■ In the case at bench it appears from the complaint that Watson was indicted and acquitted on the very charges which are the foundation

of this civil suit. The complaint here alleges that at all times after the acquittal the board of supervisors believed the county had no cause of action. It is not alleged that this belief of the board was other than an honest opinion based upon adequate information and advice. It is not contended that the supervisors were parties to the alleged conspiracy, or that they were influenced by any improper motive or consideration in refusing to bring a civil action.

Pertinent here is the language in *Elliott* v. *Superior Court, supra,* 180 Cal.App.2d 894, where a complaint filed by a taxpayer (Aye) was held insufficient to state a cause of action on behalf of a drainage district and the State Lands Commission. The appellate court said (at p. 898): "The gist of Mr. Aye's complaint was that both governmental agencies had a cause of action against the defendants and that they refused to prosecute it. The allegation is nothing more than an assertion that the matter had been brought to the attention of the proper officials and that they exercised their discretion by refusing to join in the action."

The fact that the supervisors honestly believed the county had no cause of action was an excellent reason for a decision not to sue. The acquittal of Watson did not itself establish that the acts charged were not committed by the defendant (*Beckner* v. *Sears, Roebuck & Co.* (1970) 4 Cal.App.3d 504, 509 [84 Cal.Rptr. 315]), but the criminal trial afforded an opportunity to see the evidence upon which the charges were based. If in the light of these circumstances the supervisors honestly believed the county had no cause of action, it was well within the discretion of the board to forbear.

*Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184 [81 Cal. Rptr. 683], does not support plaintiff's complaint here. In the *Knoff* case it appeared that the San Francisco assessor had been indicted for receiving bribes, there was reason to believe that property had been underassessed or not assessed, and that the defendant supervisors had failed to act. The superior court judgment ordered the supervisors to initiate immediately an investigation and to take appropriate action to recover any property taxes and penalties which were owing. In affirming the judgment the Court of Appeal pointed out (at page 197) that the trial court had not directed any specific result as to any individual assessments or taxpayers. The judgment directed the supervisors to exercise their discretion, but not how to exercise it.

In the case at bench, plaintiff is asking the court to substitute its own discretion for that of the supervisors with respect to a particular claim. That is beyond anything involved in *Knoff*.

*Statute of Limitations.*

(a) Watson, Summers and Travelers.

For the cause of action against Travelers on Watson's official bond, the applicable period of limitations is three years, as provided in Code of

Civil Procedure, section 338, subdivision 5. Since the complaint against Watson and Summers is based upon fraud, the applicable period is also three years, as provided in Code of Civil Procedure, section 338, subdivision 4.[1]

Plaintiff relies on various circumstances to extend the time.

The complaint shows that on December 4, 1966, plaintiff wrote to the board of supervisors describing the charges in the Watson indictment and demanding action by the board. This letter clearly establishes notice to the county, as of the date of receipt, sufficient to start the statute running. The action was filed June 1, 1970, which is more than three years thereafter. It is thus barred unless the running of the statute was suspended.

The complaint alleges that Watson's testimony in the criminal case and his other public statements that he was not guilty of any wrongdoing were believed by the supervisors, and this had the effect of concealing the conspiracy even after the criminal trial. This kind of allegation is insufficient to support a complaint brought more than three years after the cause of action accrued. ■ To obtain the benefit of the late-discovery exception to the statute of limitations, the complaint must allege facts showing that the cause of action could not with reasonable diligence have been discovered prior to three years before the suit. (See *Orange County Rock etc. Co.* v. *Cook Bros. Equip. Co.* (1966) 246 Cal.App.2d 698 [55 Cal.Rptr. 265]; 2 Witkin, Cal. Procedure (2d ed. 1970) p. 1180.) ■ Manifestly, plaintiff has not attempted to come within this rule. The complaint shows the contrary—namely, that the matter was brought to the board's attention by the indictment and by the letter of December 4, 1966. The county was clearly on notice from that time forward, and Watson's assertions of innocence thereafter cannot be regarded as "concealment." (See *Neff* v. *New York Life Ins. Co.* (1947) 30 Cal.2d 165, 172 [180 P.2d 900, 171 A.L.R. 563].)

Plaintiff argues that the pendency of the criminal prosecution operates to suspend the running of the statute of limitations, but he cites no statute or decision which supports any such principle in California law, and we know of none applicable to the case at bench. The pendency of the criminal

---

[1]Code of Civil Procedure, section 338: "Within three years:

" . . . . . . . . . . . . .

"4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.

"5. An action upon a bond of a public official except any cause of action based on fraud or embezzlement is not to be deemed to have accrued until the discovery, by the aggrieved party or his agent, of the facts constituting said cause of action upon the bond."

prosecution created no legal impediment to the commencement of a civil action. In *Knoff* v. *City etc. of San Francisco, supra* (1 Cal.App.3d at p. 201) the court held that the pendency of criminal prosecution of the assessor did not justify delay on the part of the supervisors, and the court ordered the supervisors to take such action as might be appropriate to recover money due. In the case at bench, as in *Knoff,* the civil cause of action did not depend upon the outcome of the criminal prosecution. The pendency of that case did not extend the three-year period within which the county was entitled to sue.

Plaintiff also argues that the advice given by District Attorney Younger and County Counsel Kennedy in December 1966 disabled the county from filing suit, and that their advice operated as an estoppel to rely upon the statute of limitations thereafter. Before discussing this contention it is necessary to mention some facts which the argument overlooks: that the cause of action we are talking about belonged to the county; that Mr. Kennedy was the attorney for the county, and his advice to his client to defer action could not extend the time within which his client could sue. Nor could his advice to his client estop any prospective defendant from relying upon any applicable defense. There is no allegation that any of the defendants, or anyone authorized to speak for them, asked the county to delay bringing a civil action.

The Kennedy-Younger correspondence attached as exhibits to the complaint makes clear that their reasons for recommending delay were not legal but practical. Mr. Kennedy's letter did not specifically ask the district attorney anything about the advisability of filing a civil action. The Kennedy letter asked whether the board of supervisors should order an audit to be made of the documents involving the Newberry assessment. Specifically, Mr. Kennedy asked whether such action might "impinge upon the trial of the indictments" and whether action by the supervisors might prejudice the rights of Watson to a fair trial. The Kennedy letter closed with this paragraph:

"During the past twenty-two years that I have served as County Counsel of the County of Los Angeles from time to time I have dealt with Mr. Phill Silver, Attorney at Law, in connection with several lawsuits which he has filed in behalf of all taxpayers and which he believed to be in the public interest. I have found Mr. Silver cooperative in his understanding of the proper position which the County Counsel should take in such matters. Your ready response to the above questions will greatly assist me in determining the proper recommendations which I should make to the Board of Supervisors and in my reply to Mr. Silver's demands."

District Attorney Younger's reply agreed that the publicity created by any investigation by the supervisors might be interpreted as a pre-judgment which would prejudice Watson in the criminal trial. Mr. Younger also pointed out that an audit of the kind which Silver had demanded might be construed by Newberry as "attempted intimidation to insure their continued assistance in the trial of this case."

At the time these letters were written it was foreseeable that the criminal case would go to trial within a few months (as it did) after which the county counsel would have an opportunity to appraise the prospects of a civil action in the light of evidence produced in the criminal trial.

There is ample justification for Mr. Silver's belief that a purpose of the two county law officers in December 1966 was to persuade him not to get involved at that time. Plaintiff alleges that pursuant to their request he did agree to withhold the filing of any action until determination of the criminal action. What they said was specifically limited to the time while the criminal proceedings were pending—a period which ended not later than July 24, 1967. What plaintiff's contention comes down to is that where county officials persuaded one taxpayer to defer filing a taxpayer's suit, the potential defendants in such an action are deprived of the protection of the statute of limitations. The fact that Mr. Younger put his request on the grounds of fairness to the defendant Watson adds nothing. Watson was an involuntary participant in both proceedings, and he did not solicit delay or waive his defenses.

The simple fact which is amply demonstrated by the complaint here read as a whole is this: the county allowed the statute of limitations to run out for the reason that the board of supervisors believed it had no cause of action.

(b) Newberry.

■ Prior to 1966 the time limit for escape assessments provided in Revenue and Taxation Code section 532 was two assessment years following the year in which the property escaped taxation. (See *Learner Co.* v. *County of Alameda* (1965) 234 Cal.App.2d 278 [44 Cal.Rptr. 535].)

In 1966 section 532 was repealed and reenacted to provide that whenever taxable personal property escaped assessment as a result of a nonwilful act or omission of the taxpayer the assesseor should assess the property for the year in which it escaped assessment at any time within five years after July 1 of the year in which it had escaped. The 1966 statute further provided that when "the failure to regularly assess such property was caused in whole or in part by the fraudulent act or omission of the taxpayer or by

fraudulent collusion between the taxpayer, his agent or representative, and the assessor or any of his deputies, the assessor shall within 18 months of the discovery levy an escape assessment upon such property, and shall also levy a penal assessment thereon pursuant to Section 504. Such assessments upon such property may not be made more than six years following the lien date for the year in which the property escaped assessment." (Stats. 1966, First Ex. Sess., ch. 147, § 49, p. 663.)

The 1967 amendment repealed the language quoted above and stated the limitation in the following language: "Any assessment to which the penalty provided for in Section 504 must be added shall be made within six years after the lien date in which the property escaped taxation or was underassessed. Any other assessment made pursuant to Article 3 or Article 4 of this Chapter 3 shall be made within four years after the lien date in which the property escaped taxation or was underassessed." (Stats. 1967, ch. 1418, § 16, p. 3338.)

The 1968 amendment to section 532 substituted "July 1 of the assessment year" in place of "the lien date." (Stats. 1968, ch. 573, § 1, p. 1238.) This was the form of the statute when this action was commenced in 1970.

Section 504, at all times material here, has provided a penalty to be imposed for wilful misrepresentation by the taxpayer.

The period prescribed by old section 532 expired in March 1965 unless it was extended by reason of the taxpayer's fraud. If the power to assess for the year 1962 was still alive in 1966, it became subject to the six-year bar which was established at that time. (See *Angeli* v. *Lischetti* (1962) 58 Cal.2d 474 [24 Cal.Rptr. 845, 374 P.2d 813].) This six-year statute would bar any assessment for 1962 after July 1, 1968. Since section 532, as it has read since 1966, provides two periods of limitation, a six-year period where there has been fraud and a shorter period for other cases, there can be no implied extension of the period for undiscovered fraud. The legislative purpose is to set a six-year limit irrespective of the time of discovery.

Since the power to assess Newberry for the 1961 and 1962 assessment years had expired, at the time this action was begun, there was no way for the county to proceed under the statutory system to impose additional taxes on Newberry for those years.

The Attorney General issued a formal opinion, dated August 12, 1966, that where an assessment was due to collusion between the assessor and the taxpayer's representative, a civil suit against the taxpayer would be proper. (48 Ops.Cal.Atty.Gen. 71.) The opinion suggests that the basis of such an action would be fraud if the taxpayer had authorized the

collusion, or undue enrichment if the taxpayer was not a party to it. This opinion was written in reference to the pre-1966 version of Revenue and Taxation Code section 532 which permitted escape assessments to be made only within the two assessment years succeeding the year the property escaped and which made no distinction between frauds and other kinds of escape.

There is no need to decide here whether any such civil action might have been brought against Newberry, since if there was a cause of action, the statute of limitations has run. The period within which the county may sue for recovery of property taxes is three years (Code Civ. Proc., § 338, subd. 1; *County of Los Angeles* v. *Ballerino* (1893) 99 Cal. 593, 595 [32 P. 581, 34 P. 329]); the period for an action upon an obligation or liability not founded upon an instrument in writing is two years (Code Civ. Proc., § 339, subd. 1); and the period for fraud is three years from discovery (Code Civ. Proc., § 338, subd. 4). Since the county was on notice not later than December 1966, this 1970 action is barred under any theory of liability.

The judgments are affirmed.

Jefferson, J., and Dunn, J., concurred.

On August 24, 1972, the opinion was modified to read as printed above.