Filed 1/23/23 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STANLEY E. GROSZ, | B309418 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV27757) |
| v. | |
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents; | [NO CHANGE IN JUDGMENT] |
| AMAZON SERVICES, LLC, et al., | |
| Real Parties in Interest and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on January 9, 2023, be modified as follows:

1.      On page 25, the last full paragraph of footnote 12, the following citations are to be inserted after the below quotations as follows:

> "[A] court will not take judicial notice of a case that was not cited in the briefs." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ¶ 5:158.1.) Neither will appellate courts "take judicial notice of matters *irrelevant* to the dispositive point on appeal." (*Id.* at ¶ 5:156.2.)

There is no change in judgment.

Appellant's petition for rehearing is denied.

—————————————————————————————————————————

CHANEY, J.         BENDIX, Acting P. J.      BENKE, J.*

—————————————————————————————

\* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/9/23 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STANLEY E. GROSZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, et al.,<br><br>    Defendants and Respondents;<br><br>AMAZON SERVICES, LLC, et al.,<br><br>    Real Parties in Interest and Respondents. | B309418<br><br>(Los Angeles County Super. Ct. No. 19STCV27757) |

APPEAL from orders of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Affirmed.

Dakessian Law, Mardiros H. Dakessian; Capstone Law, Ryan H. Wu, and Tyler Anderson for Plaintiff and Appellant.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Lisa W. Chao, and Douglas J. Beteta, Deputy Attorneys General, for Defendants and Respondents.

Hueston Hennigan, John C. Hueston, Moez M. Kaba, Joseph A. Reiter, and Michael H. Todisco for Real Parties in Interest and Respondents.

_____

In addition to its own products, Amazon fulfills orders for products sold by third-party merchants through a program it calls "Fulfillment by Amazon" (FBA).[1] The trial court in this action described the program as alleged in the First Amended Complaint (FAC): "To support this program, Amazon contracts with merchants ('FBA Merchants') who supply the products ordered by consumers through Amazon's website. [Citation.] Amazon provides advertising, packaging, [and] delivery of the products supplied by the FBA Merchants. [Citation.] Amazon also processes payments for sales on behalf of the FBA Merchants."[2] According to the FAC, the state agency responsible

---

[1] The Real Parties in Interest are Amazon.com, Inc., Amazon Services, LLC, Amazon Fulfillment Services, Inc., Amazon Payments, Inc., and Amazon Capital Services, Inc. According to the operative complaint, these parties act in concert to administer the FBA program.

[2] On its Web site, Amazon summarizes the program this way: "Fulfillment by Amazon (FBA) is a service that allows businesses to outsource order fulfillment to Amazon. Businesses send products to Amazon fulfillment centers and when a customer makes a purchase, [Amazon] pick[s], pack[s], and ship[s] the order. [Amazon] can also provide customer service and process returns for those orders."

2

for collecting sales and use tax (currently the California Department of Tax and Fee Administration (DTFA))[3] has historically not collected from Amazon sales and use taxes for products sold through the FBA program.[4]

Stanley Grosz filed a taxpayer action under Code of Civil Procedure section 526a (Section 526a) seeking a declaration that the DTFA "has a mandatory duty to assess and collect" sales and use tax specifically from Amazon for products sold through the

---

(<http://sell.amazon.com/fulfillment-by-amazon> [as of January 6, 2023].)

[3] Before July 1, 2017, the agency responsible for collecting sales and use taxes was the State Board of Equalization. The Taxpayer Transparency and Fairness Act of 2017 created the DTFA and transferred the Board of Equalization's authority and responsibility for sales and use taxes (among other things) to the DTFA. (Stats. 2017, ch. 16, §§ 5, 14, 15; Gov. Code, §§ 15570, 15570.20, 15570.22; Rev. & Tax. Code, § 20.)

[4] In his opening brief, Stanley Grosz—the taxpayer who filed suit against the DTFA—explains that this appeal is limited to DTFA's "failure to collect tax from Amazon on FBA [s]ales transacted prior to October 1, 2019 . . . ." In 2019, the Legislature passed and the Governor signed Assembly Bill No. 147, which the Legislature called the Marketplace Facilitator Act (MFA). (Stats. 2019, ch. 5, § 2.) The bill made the MFA operative on October 1, 2019. (Stats. 2019, ch. 5, § 2; Rev. & Tax. Code, § 6049.5, subd. (a).) The MFA appears on its face to relate to transactions like the FBA transactions alleged in the FAC. We do not construe any part of the MFA here, but note only that it appears that Grosz has attempted to expressly exclude from his lawsuit any transactions occurring after the MFA's operative date.

FBA program, and an injunction requiring the DTFA to do so. The DTFA and its Director, Nicolas Maduro,[5] and the Amazon entities that Grosz named in his FAC as Real Parties in Interest all demurred to the FAC.

The trial court sustained the respondents' demurrers without leave to amend. The trial court reasoned that the Revenue and Taxation Code vests the DTFA with discretion to determine whether the FBA Merchant or Amazon is the "retailer" in any given FBA transaction for purposes of collecting sales and use tax. Because the determination is discretionary and not ministerial, the trial court reasoned that Grosz had no standing to pursue his action. (See *Silver v. Watson* (1972) 26 Cal.App.3d 905, 909 (*Silver*).)

We agree with the trial court, and will affirm the trial court's order sustaining the respondents' demurrers without leave to amend.

## BACKGROUND

Because this case is before us after a trial court sustained demurrers, and because we must accept the factual allegations in the operative complaint as true for purposes of our review of the trial court's order, the facts we recite here are drawn from the allegations in Grosz's FAC.

The FAC alleged that in addition to selling its own products, Amazon "contracts with FBA Merchants in order to offer various products supplied by FBA Merchants for sale on www.amazon.com." According to the FAC, FBA Merchants send their goods to Amazon fulfillment centers, where Amazon stores

---

[5] We refer to the DTFA and Maduro collectively as the DTFA.

4

the goods until they are sold to consumers. Amazon "handle[s] all the storing, packaging, and shipping of property held" in its fulfillment centers and "controls which fulfillment centers are used for the storage of products supplied by FBA Merchants." Amazon handles payment processing services for FBA Merchants' goods that are sold on the Amazon Web site, and "processes transactions for invoiced orders, as well as payments, refunds, and adjustments" on the FBA transactions. According to the FAC, Amazon "receives and holds sales proceeds on behalf of FBA Merchants."

According to the FAC, California imposes sales and use taxes (see Rev. & Tax. Code, §§ 6051, 6201) on "retailers." "Under California law," the FAC states, "the 'retailer' is responsible for paying to the State of California sales tax on qualifying transactions" and "is also responsible for collecting use tax on qualifying transactions from purchasers and remitting it to the State."

Citing California Code of Regulations, Title 18, section 1569 (Regulation 1569), the FAC stated that "Amazon is the 'retailer' for FBA [s]ales in California . . . ."

According to the FAC, Amazon "has not [paid] and does not pay sales tax or collect and remit use tax to California for sales in California of [goods] supplied by FBA Merchants." The FAC further alleged that the DTFA "has not [collected] and does not attempt to collect sales and use tax from Amazon for sales of [goods] in California supplied by FBA Merchants."

Based on those allegations, the FAC alleged two causes of action. First, the FAC alleged in a cause of action for injunctive relief that "Amazon is liable for at least three years of past-due taxes, interest, and penalties" and that the DTFA "had a

5

mandatory duty to assess and collect from Amazon sales and use tax" for sales of FBA Merchants' products in California.  Grosz seeks an injunction "mandating that [the DTFA] comply with its duty to enforce California's sales and use tax law by requiring Amazon to pay to the State sales and use tax on FBA [s]ales."  In his second cause of action, Grosz seeks declaratory relief in the form of a "judicial determination of the rights and duties of [the DTFA] with respect to whether at all times relevant hereto Amazon is and was a retailer under California law responsible for paying sales and use tax to the State on FBA [s]ales and as such [the DTFA] has a mandatory duty to assess and collect such tax from Amazon."

Grosz alleged that he was bringing the action under Section 526a, which creates taxpayer standing under certain circumstances.

The DTFA and Amazon both demurred to the FAC.  Among a host of other arguments, the DTFA argued that the determination about who is a "retailer" under the Revenue and Taxation Code or the accompanying regulations is left to the discretion of the DTFA.[6]  "Determinations that a party is a 'retailer' in California, liable for the sales tax or collection of the use tax, required to file a tax return, and collection is worth pursuing," the DTFA argued, "require the [DTFA] to act according to the dictates of its own judgment."  The DTFA argued that under Section 526a, "a taxpayer must allege a governmental action was mandatory, not discretionary . . . ."  "A mandatory duty to act," the DTFA argued, "is one where the government

---

[6] Again, the arguments in this case focus on transactions that occurred before the enactment of Marketplace Facilitator Act in 2019.

6

agency or officer has a clear, present and 'ministerial duty' to act . . . , meaning the agency or officer 'is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.' " Amazon joined in the DTFA's arguments, and included its own argument regarding Grosz's standing to enjoin the DTFA's discretionary acts.[7]

---

[7] Amazon filed and the trial court granted a request for judicial notice of a 2012 letter from the State Board of Equalization (BOE) concluding that under the facts as explained to the BOE and detailed in the letter, neither Amazon nor any of its related entities was a "retailer" under Regulation 1569. The BOE's determination in its advice letter appears to have been based largely on its understanding that in order to effectuate a sale from an FBA Merchant to a consumer in most instances, Amazon had to submit the order to the FBA Merchant and the FBA Merchant had to approve the order. On that basis, Amazon did not have the power to transfer title or cause title to be transferred from the FBA Merchant to the consumer without action by the FBA Merchant. In other instances, one of the Amazon entities that did not have physical possession of the property (and was therefore not a "retailer" under Regulation 1569) had authority to transfer title, and another Amazon entity without authority to transfer title (and therefore not a "retailer" under Regulation 1569) had physical possession of the property.

The BOE's letter is based on many BOE communications with Amazon's accountants and contains facts different from those alleged in the FAC. While we recognize that the BOE interpreted the statutes and regulations at issue in this case the way it did in 2012 based on the facts before it at that time, we also recognize that the BOE's letter goes to great lengths to limit itself to the facts recited in the letter. Judicial notice of what the BOE did is judicial notice only of the BOE's action, and *not* of the

The trial court agreed with the DTFA's and Amazon's contention that Grosz lacked standing under Section 526a because his lawsuit sought an injunction directing the DTFA how to exercise its discretion. Quoting *Silver*, *supra*, 26 Cal.App.3d at page 909, the trial court explained that " '[a] taxpayer may not bring an action on behalf of a public agency unless the governing body has a duty to act, and has refused to do so. *If the governing body has discretion in the matter, the taxpayer may not interfere.*' " (Italics added by trial court.) The trial court explained the distinction between ministerial and discretionary acts, and explained, quoting *Sonoma Ag Art v. Department of Food & Agriculture* (2004) 125 Cal.App.4th 122, 127 that " '[e]ven if mandatory language appears in [a] statute creating a duty, the duty is discretionary if the [public entity] must exercise significant discretion to perform the duty.' " Citing a variety of Revenue and Taxation Code provisions, the trial court explained in depth that the DTFA "is the proper entity vested with authority to make the determination as to which party—FBA Merchants or Amazon—is the retailer" for purposes of sales and use tax on FBA transactions. "Indeed," the trial court reasoned, "by asserting that it was mandatory for the [DTFA] to determine that Amazon was the retailer for the transactions at issue, [Grosz] is conceding that [the DTFA] was the proper entity vested with the authority to make the determination of which party was the retailer." The trial court reasoned that Grosz's argument was not that the DTFA did not have the authority to determine the

---

facts in the BOE's letter, which are different than the facts asserted in the FAC. (See *Chacon v. Union Pacific Railroad* (2020) 56 Cal.App.5th 565, 573 [judicial notice may be taken of a document, but not the truth of its contents].)

8

identity of the retailer under the applicable statutory scheme, but rather that "the statutory scheme mandated that [the DTFA] conclude that Amazon was the retailer . . . ."

The trial court then examined the legal authority that the parties identified as relevant—"Revenue and Tax[ation] Code [sections] 6014, 6015, and 6006, as well as [Regulation] 1569"—to determine whether those statutes "mandated the legal conclusion that Amazon (and not the FBA Merchants) were the retailer for the FBA [s]ales described in the FAC." On its examination, the trial court noted that "inasmuch as Amazon may qualify as a 'retailer' under Revenue and Tax[ation] Code sections 6014 and 6015, these definitions of 'retailer' apply with equal, if not greater, force to the FBA Merchants, who source and sell their products on Amazon.com." The trial court pointed out that Grosz's argument "appeared to urge that the [trial] court abandon Revenue and Tax[ation] Code sections 6014 and 6015 altogether in its analysis" and consider "Revenue and Tax[ation] Code section 6007[, subdivision ](a)(2) and [Regulation] 1569 in isolation and at the exclusion of all other provisions of the statutory scheme in determining which party—Amazon or the FBA Merchants—were the retailers for purposes of the sales and use taxes."

The trial court declined to do so, explaining: "The determination of which party—FBA Merchants or Amazon—was the retailer necessarily entailed consideration of all sections of the vast statutory scheme and required discretion especially considering 'the "highly technical," "intensely detailed and fact-specific sales tax system governing an enormous universe of transactions." ' " The trial court understood the statutes to mean that "[b]ecause there is but one transaction or sale of the product

9

to the customer, [the DTFA] may collect the sales and use taxes either from Amazon or from the FBA Merchants, but not both. Because the definition of 'retailer' set forth in the statutes cited by [Grosz] . . . apply with equal or greater force to the FBA Merchants, [Grosz] has merely demonstrated at best that [the DTFA] could have chosen either Amazon or the FBA Merchants as the 'retailer' liable for sales and use taxes for each FBA sale, meaning that [the DTFA] had the discretion to choose either one."  "The mere fact that [Grosz] disagrees with the outcome of [the DTFA]'s discretionary determination," the trial court explained, "does not mean that [the DTFA] violated a mandatory duty."

Because the trial court concluded that the determination whether Amazon or a given FBA Merchant was the "retailer" for purposes of sales and use tax was discretionary and not ministerial, the trial court concluded that Grosz did not have standing to challenge the DTFA's determination.  And because Grosz's lawsuit was premised on the alleged failure of the DTFA to perform a duty that was discretionary, rather than mandatory, the trial court concluded that there was no reasonable possibility that Grosz could amend his complaint to state a viable cause of action.  On that basis, the trial court denied Grosz leave to amend his complaint.

Based on its order sustaining the DTFA's and Amazon's demurrers without leave to amend, the trial court directed the clerk to enter an order dismissing the matter.  Grosz filed a timely notice of appeal.

10

## DISCUSSION

### A. The Law

#### 1. Demurrer

"A demurrer tests the sufficiency of the allegations in a complaint as a matter of law. [Citation.] We review the sufficiency of the challenged complaint de novo. [Citation.] We accept as true the properly pleaded allegations of fact in the complaint, but not the contentions, deductions or conclusions of fact or law. [Citation.] We also accept as true facts which may be inferred from those expressly alleged. [Citation.] We consider matters which may be judicially noticed, and we 'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' [Citation.] . . . The complaint's 'allegations must be liberally construed, with a view to substantial justice between the parties.' [Citation.] The judgment or order of dismissal entered after the demurrer is sustained must be affirmed if any of the grounds for demurrer raised by the defendant is well taken and disposes of the complaint. [Citation.] But it is error to sustain a general demurrer if the complaint states a cause of action under any possible legal theory." (*In re Electric Refund Cases* (2010) 184 Cal.App.4th 1490, 1500.)

#### 2. Code of Civil Procedure Section 526a

"The purpose of [S]ection 526a, 'which applies to citizen and corporate taxpayers alike, is to permit a large body of persons to challenge wasteful government action that otherwise would go unchallenged because of the standing requirement. [Citation.] . . . [A]lthough by its terms the statute applies to local governments, it has been judicially extended to all state and local agencies and officials. [Citations.]' [Citation.] ' "[T]he individual

11

citizen must be able to take the initiative through taxpayers' suits to keep government accountable on the state as well as on the local level." ' " (*Vasquez v. State of California* (2003) 105 Cal.App.4th 849, 854, fn. omitted.)

"It is established that an action lies under [S]ection 526a not only to enjoin wasteful expenditures, but also to enforce the government's duty to collect funds due the State. ' "A taxpayer may sue a governmental body in a representative capacity in cases involving [its] . . . failure . . . to perform a duty specifically enjoined." [Citation.] This well-established rule *ensures that the California courts*, by entertaining only those taxpayers' suits that seek to measure governmental performance against a legal standard, *do not trespass into the domain of legislative or executive discretion*. [Citations.] This rule similarly serves to prevent the courts from hearing complaints which seek relief that the courts cannot effectively render; the courts cannot formulate decrees that involve the exercise of indefinable discretion; their decrees can only restrict conduct that can be tested against legal standards. [Citations.]' " (*Vasquez v. State of California, supra*, 105 Cal.App.4th at pp. 854-855, italics added.)

"The cases have . . . been careful to note that [S]ection 526a has its limits. In particular, the courts have stressed that *the statute should not be applied to principally 'political' issues or issues involving the exercise of the discretion of either the legislative or executive branches of government*." (*Humane Society of the United States v. State Bd. of Equalization* (2007) 152 Cal.App.4th 349, 356, italics added; see *Silver, supra*, 26 Cal.App.3d at p. 909 ["[i]f the governing body has discretion in the matter, the taxpayer may not interfere"].)

### 3. Sales and Use Tax "Retailer"

"The California Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.) embodies a comprehensive tax system created to impose an excise tax, for the support of state and local government, on the sale, use, storage or consumption of tangible personal property within the state. [Citation.] The two taxes, sales and use, are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question. In essence ' "[a] sales tax is a tax on the freedom of purchase . . . [a] use tax is a tax on the enjoyment of that which was purchased.' " [Citations.] [¶] The use tax supplements the sales tax by imposing on those subject to it the same tax burden as would otherwise be assessed under the sales tax." (*Wallace Berrie & Co. v. State Bd. of Equalization* (1985) 40 Cal.3d 60, 66-67, fns. omitted.)

Specifically, California law imposes a tax on "the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state . . . ." (Rev. & Tax. Code, § 6051.) The sales tax is imposed on and collected from "retailers." (*Ibid*.) California law also imposes a tax on the "storage, use, or other consumption in this state of tangible personal property purchased from any retailer . . . ." (Rev. & Tax. Code, § 6201.) This tax is imposed on the retail purchaser, but is collected from the purchaser by the "retailer" and remitted to the state. (Rev. & Tax. Code, §§ 6202, 6203.)

Pertinent to this appeal, the Sales and Use Tax Law states that " '[r]etailer' includes," among other things, "[e]very seller who makes any retail sale or sales of tangible personal property . . ." and "[e]very person engaged in the business of making sales for storage, use, or other consumption . . . ." (Rev. & Tax. Code,

13

§ 6015, subd. (a)(1) & (2).)  A " '[s]eller' includes every person engaged in the business of selling tangible personal property of a kind the gross receipts from the retail sale of which are required to be included in the measure of the sales tax."  (Rev. & Tax. Code, § 6014.)  "A 'retail sale' . . . means a sale for a purpose other than resale in the regular course of business in the form of tangible personal property."  (Rev. & Tax. Code, § 6007.)  And a " 'sale' " means, among other things, "[a]ny transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration.  'Transfer of possession' includes only transactions found by the [DTFA] to be in lieu of a transfer of title, exchange, or barter."  (Rev. & Tax. Code, § 6006, subd. (a).)

The Sales and Use Tax Law expressly makes the DTFA responsible to enforce its provisions and allows it to "prescribe, adopt, and enforce rules and regulations relating to [its] administration and enforcement."  (Rev. & Tax. Code, § 7051.)  The DTFA may also "prescribe the extent to which any ruling or regulation shall be applied without retroactive effect."  (*Ibid.*)

One such regulation—the regulation that Grosz contends disposes of this matter—is Regulation 1569, which states in full: "A person who has possession of property owned by another, and also the power to cause title to that property to be transferred to a third person without any further action on the part of its owner, and who exercises such power, is a retailer when the party to whom title is transferred is a consumer.  Tax applies to his gross receipts from such a sale.  [¶]  Pawnbrokers, storage men, mechanics, artisans, or others selling the property to enforce a

14

lien thereon, are retailers with respect to sales of the property to consumers and tax applies to the receipts from such sales."

### B. Analysis

Because taxpayers have no authority to enjoin discretionary government activity under Section 526a (*Silver*, *supra*, 26 Cal.App.3d at p. 909), the outcome of Grosz's appeal turns on whether the DTFA has discretion to determine who the "retailer" is for purposes of a transaction subject to the Sales and Use Tax Law.[8]

Grosz contends that the trial court erred when it concluded that the determination of who is a "retailer" under the Sales and Use Tax Law for purposes of Amazon's FBA program involves an exercise of discretion, and therefore is not properly the subject of a Section 526a suit. According to Grosz, Regulation 1569 governs the outcome of the suit, because it requires the DTFA to conclude that Amazon was the retailer for purposes of FBA sales in California, to the exclusion of FBA Merchants.

At the outset, we address what appears in Grosz's briefing to be an argument Grosz intended to make (but ultimately did not make) about the proper function of both the trial court and this court in reviewing the sufficiency of a complaint on demurrer. Grosz alludes to, but never develops, an argument that the FAC "alleges that, under the Revenue and Tax[ation] Code . . . Amazon is the 'retailer' liable for payment of sales and use tax on FBA [s]ales." Grosz then characterizes the trial court's conclusion on the central question in this case as "a merits

---

[8] Grosz concedes that a sales or use tax can only be applied once to a retail transaction—that Amazon *and* any particular FBA Merchant "cannot both be held liable for tax on the same . . . sale."

15

determination that is impermissible on a demurrer." Grosz contends that the trial court "committed *two* principle errors. First," Grosz argues, "the trial court *misapplied the law*." (Italics added.) Grosz continues: "Second, the trial court's reasoning crosses into merits issues that must be resolved on an evidentiary record . . . [because] [t]he trial court made a merits finding that the FBA Merchants were in fact 'retailers' under the [Revenue and Taxation Code] with respect to FBA [s]ales." Grosz argues that this "merits finding" turns on "factually contested issues."[9]

In his FAC, Grosz made several statements, in a section entitled "factual allegations," that he appears to allude to as facts that the trial court should have taken (and we should take) as true. Namely, he contends that California imposes sales and use taxes under certain circumstances and that "retailers" are responsible for paying sales tax and collecting and remitting use tax. In the same "factual allegations" section, the FAC selectively quotes from Revenue and Taxation Code sections 6014 and 6015 and Regulation 1569 to define "retailer" and "seller." And ultimately—again in the same "factual allegations" section—the FAC states: "Amazon is the 'retailer' for FBA [s]ales in California because, among other reasons, one or more Amazon entities—either individually or collectively—satisfies the requirements of California Revenue and Taxation Code [sections] 6014, 6015 and [Regulation] 1569. Amazon is also the 'retailer' because, among other reasons, one or more Amazon entities is/are the

---

[9] This characterization, of course, undermines Grosz's argument on appeal. If something is a "ministerial" task, it is counterintuitive to suggest that the resolution of the question would ultimately turn on "factually contested issues" that require the development of a factual record.

'retailer(s)'—either individually or collectively—under California Revenue and Taxation Code [section] 6007, regarding sales in California of Products supplied by FBA Merchants that are not otherwise engaged in business in California.  Notably, ownership of property is not required for one to be considered a 'retailer.' "

These are not factual allegations.  They are legal conclusions.

To the extent Grosz's allusions to "determination[s] that [are] impermissible on a demurrer" refer to the trial court's interpretation of the Revenue and Taxation Code and its associated regulatory scheme to determine whether the identity of a "retailer" is a discretionary question for the DTFA, we reject Grosz's characterization.  The DTFA's, Amazon's, and Grosz's arguments both in the trial court and here center exclusively on questions of statutory interpretation.  Statutory construction questions are "pure questions of law."  (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.)

Specifically—and more to the point—the determination whether the question of who is a retailer under the Sales and Use Tax Law is discretionary or ministerial is a question of law. (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 779-780 [" 'In most cases, the appellate court must determine whether the agency had a ministerial duty capable of direct enforcement or a quasi-legislative duty entitled to a considerable degree of deference.  This question is generally subject to de novo review on appeal because it is one of statutory interpretation' "].)  As did the trial court, we note that for purposes of a demurrer, "[t]he court does not . . . assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

17

On the statutory interpretation question, we conclude, as did the trial court, that the determination of who is a "retailer" under the Sales and Use Tax Law and relevant regulations is one that invokes the discretion of the DTFA; making that designation is not a ministerial task.

As Grosz confirmed at oral argument in this matter, courts in Section 526a actions "can only restrict conduct that can be tested against legal standards." (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 161.) "[T]he courts cannot formulate decrees that involve the exercise of indefinable discretion . . . ." (*Ibid.*)

At oral argument, Grosz identified *County of Sonoma v. State Bd. of Equalization* (1987) 195 Cal.App.3d 982 (*Sonoma*), as the case most favorable to his argument. In that case, Grosz argued, a taxpayer had standing under Section 526a to require the BOE to collect a sales tax on geothermal steam even though the BOE's interpretation of a particular Revenue and Taxation Code section was that the law exempted sales of geothermal steam.

The nature of the dispute in *Sonoma* compared to the nature of the dispute here highlights the context of a ministerial action as opposed to a discretionary action, and provides us a framework from which to analyze the statutes involved here. In *Sonoma*, "[f]acilities to take advantage of the geothermal energy resources in the area known as The Geysers in Sonoma County were first construed in 1957. Several companies captured the steam and sold it to utility companies which used it to spin turbines, thereby generating electricity. . . . [Citation.] No sales tax was collected by the Board on sales of the geothermal steam in these circumstances because it considered the sales to be

18

exempt" under the Revenue and Taxation Code. (*Sonoma*, *supra*, 195 Cal.App.3d 982, 986.) The Court of Appeal determined that the taxpayer who brought suit under Section 526a had standing to sue because he was not challenging an exercise of discretion, but rather the extent of the BOE's authority in the first instance. (*Id.* at p. 989.) In other words, the taxpayer was *not* challenging an exercise of discretion, but rather was challenging whether the BOE had any discretion to exercise.

Either there was, as the BOE argued, an exemption, in which case *no* taxes were to be collected. Or there was *no* exemption, and taxes were to be collected. The question was one of statutory interpretation, and there was no BOE discretion to be exercised. *Here,* by contrast, the question is not whether the law imposes a tax, but rather *on whom*, based on language in several interrelated statutes. The question here, as the trial court pointed out, is not whether the DTFA has discretion, but rather *how it must exercise* that discretion. *That* is the critical distinction between this case and *Sonoma*.

Grosz attempts to overcome this distinction by arguing that because of the language of Regulation 1569, there is only one possible way the DTFA could exercise its discretion—that there is only one conclusion to be drawn about who a "retailer" is under the appropriate statutes. For Grosz to have standing, then, we must interpret the language of Regulation 1569 in the same way he does.

To be designated what Grosz terms "*the*" retailer under Regulation 1569, Grosz contends, one must meet three "elements": "(1) the person [or entity] has possession of property owned by another; (2) the person [or entity] has the power to cause title to that property to be transferred to a third person

19

without any further action on the part of the owner; and (3) the person [or entity] exercises that power."  Because Amazon meets those three elements, Grosz argues, Regulation 1569 renders Amazon the *only* retailer for purposes of FBA sales through the words "[t]ax applies":  "Tax applies to his gross receipts from such a sale."

Grosz argues that the trial court should have limited its analysis to Regulation 1569.  Indeed, Grosz contends that "the court erred in reaching for the wider statutory and administrative Sales and Use Tax scheme to ignore the application of the specific regulation" because "The FAC explains" that FBA transactions "meet the elements of Regulation 1569."

However, in urging us to adopt his argument (and his reading of Regulation 1569, which we address below), Grosz *correctly* tells us that "California courts apply the regular rules of statutory construction when interpreting regulations."  (See *Trejo v. County of Los Angeles* (2020) 50 Cal.App.5th 129, 140.)  He *then* tells us—again correctly—that "the words of a regulation are to be interpreted '*in context, harmonizing to the extent possible all provisions relating to the same subject matter.*' "  (Quoting *Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1506, italics added.)

As a matter of statutory interpretation, then, it would have been inappropriate for the trial court to make its determination in this matter by taking selected language in Regulation 1569 out of context and ignoring other statutory provisions "relating to the same subject matter"—provisions that Grosz cited in his FAC and oppositions to the demurrers.

As in any case involving statutory interpretation, we begin with the text of the statute.  (*Bruni v. The Edward Thomas*

*Hospitality Corp.* (2021) 64 Cal.App.5th 247, 255.) Here, Grosz argues that Regulation 1569 is dispositive. Regulation 1569 states: "A person who has possession of property owned by another, and also the power to cause title to that property to be transferred to a third person without any further action on the part of its owner, and who exercises such power, is a retailer when the party to whom title is transferred is a consumer. Tax applies to his gross receipts from such a sale. [¶] Pawnbrokers, storage men, mechanics, artisans, or others selling the property to enforce a lien thereon, are retailers with respect to sales of the property to consumers and tax applies to the receipts from such sales."

We do not interpret Regulation 1569 in the same way Grosz urges. As an initial matter we note that the plain language of Regulation 1569 does not designate any particular person or entity as "*the*" retailer in any set of circumstances, but rather as "*a* retailer." And the language "[t]ax applies to his gross receipts from such sales" does not lead us to a different conclusion. That is because, as we understand from other portions of the Revenue and Taxation Code, "tax" may "apply" in any given situation covered by the Sales and Use Tax Law, but who collects it, from whom it is due, and how and when it is paid are all questions, among many others, that may have different answers depending on the contours of an individual transaction. To say that a "tax applies" is not the same as saying that the tax is owed by or collectible from one particular person or entity as part of a multi-party transaction. It is merely a statement that the transaction in question is one to which either sales or use "tax applies." Consequently, even if we were to limit our review, as Grosz urges, to the language of Regulation 1569, we would not conclude

21

that it commands the DTFA to tax Amazon to the exclusion of any other participant in an FBA transaction.[10]

Moreover, to determine whether the designation of a taxpayer as a "retailer" under the Sales and Use Tax Law is discretionary or ministerial requires us to examine more than just Regulation 1569.  The Sales and Use Tax Law itself expressly defines "Retailer" in Revenue and Taxation Code section 6015.  According to section 6015, " 'Retailer' includes:  [¶] (1) Every seller who makes any retail sale or sales of tangible personal property, and every person engaged in the business of making retail sales at auction of tangible personal property owned by the person or others.  [¶]  (2) Every person engaged in the business of making sales for storage, use, or other consumption or in the business of making sales at auction of tangible personal property owned by the person or others for storage, use, or other consumption."[11]  (Rev. & Tax. Code, § 6015, subd. (a)(1) & (2).)  Section 6015 *also* provides that "[w]hen the [DTFA] determines that it is necessary for the efficient

_____

[10] We also again note that it is the DTFA that is charged with "prescrib[ing], adopt[ing], and enforc[ing] rules and regulations relating to the administration and enforcement of" the Sales and Use Tax Law, and the DTFA "may prescribe the *extent* to which *any* ruling or *regulation* shall be applied without retroactive effect."  (Rev. & Tax. Code, § 7051, italics added.)  Consequently, the DTFA is statutorily clothed with some discretion regarding even the application of Regulation 1569.

[11] The third definition of "retailer" is "[a]ny person conducting a race meeting under Chapter 4 of Division 8 of the Business and Professions Code, with respect to horses which are claimed during such meeting."  (Rev. & Tax. Code, § 6015, subd. (a)(3).)

22

administration of this part to regard any salesmen, representatives, peddlers, or canvassers as the agents of the dealers, distributors, supervisors, or employers under whom they operate or from whom they obtain the tangible personal property sold by them, irrespective of whether they are making sales on their own behalf or on behalf of the dealers, distributors, supervisors, or employers the board may so regard them and may regard the dealers, distributors, supervisors, or employers as retailers for purposes of this part." (Rev. & Tax. Code, § 6015, subd. (b).)

In addition to *expressly* giving the DTFA discretion to determine who "may [be] regard[ed] . . . as retailers" for purposes of the Sales and Use Tax Law under the circumstances outlined in Revenue and Taxation Code section 6015, subdivision (b), we note the *broad* discretion the Legislature has given the DTFA generally. (Gov. Code, §§ 15570 et seq.)

Before the BOE's "duties, powers, and responsibilities" under the Sales and Use Tax Law were transferred from the BOE to the DTFA (upon the DTFA's establishment) (Gov. Code, § 15570.2), we considered the discretion vested in the BOE (and now the DTFA) to determine the identity of a "retailer" under the Sales and Use Tax Law. (*Associated Beverage Co. v. Board of Equalization* (1990) 224 Cal.App.3d 192.) At the time, there was obviously record evidence before us about the BOE's "usual procedure in considering . . . on a case by case basis" whether to classify any particular taxpayer as a "Section 6015 retailer." (*Id.* at p. 202.) "The essential determination," we said in that case, "is that the reclassification of certain taxpayers is necessary to the efficient administration of the sales tax." (*Ibid.*) We upheld a regulation the BOE had promulgated that "treat[ed] *all* suppliers

23

of a certain class of vending machine operators as retailers."
(*Ibid*.)  We noted that "[g]enerally, [the BOE] does not apply . . .
section 6015 on an industry- or class-wide basis, but looks at an
individual business and determines whether it is appropriate to
regard the initial purveyor as the retailer, thereafter following" a
procedure to make a final determination about who constitutes
the "retailer" in a given scenario.  (*Id*. at pp. 202-203.)

In requests for judicial notice in the trial court and here,
the parties provided us with several legal opinions issued by the
BOE regarding whether a taxpayer was a retailer under Revenue
and Taxation Code section 6015 and, in the case of one of Grosz's
requests for judicial notice, under Regulation 1569.[12]  As we

_____

[12] Grosz has filed three requests for judicial notice in this
court.  The first, filed November 22, 2021, requested judicial
notice of three legal opinion letters from BOE counsel regarding
Regulation 1569 and the designation of taxpayers under that
regulation.  The DTFA argues that the letters at issue are not
subject to judicial notice because they are opinions of BOE
counsel and are not "official acts," but rather are merely
correspondence from BOE employees.  Regardless of how the
letters are characterized, we grant the November 22, 2021
request for judicial notice.

Grosz filed a second request for judicial notice on February
2, 2022, this time requesting that we judicially notice a request
for judicial notice that the DTFA filed in a case in another Court
of Appeal that attached several documents.  Although the
relevance to this appeal of a request for judicial notice filed in a
different appeal and any document attached to that request for
judicial notice is tenuous, at best, we nevertheless grant the
February 2, 2022 request for judicial notice.

On September 19, 2022, Grosz filed a third request for
judicial notice.  This request asked us to judicially notice a
complaint that the State of California has filed against Amazon

24

noted in footnote 7 above, Amazon requested and in 2012 the BOE provided a legal opinion regarding whether Amazon was a retailer for purposes of FBA transactions.

" 'Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular

---

in the San Francisco County Superior Court for alleged violations of the Cartwright Act (Bus. & Prof. Code, §§ 16720 et seq.) and the Unfair Competition Law (Bus. & Prof. Code, §§ 17200 et seq.). The complaint discusses transactions that appear to fall within the FBA program, among other transactions, and refers to Amazon as a "retailer" in various places. The request also asks us to judicially notice an opinion from the Commonwealth Court of Pennsylvania purporting to decide "cross-applications for summary relief." The opinion refers to "[t]he key issue" in the case as "whether non-Pennsylvania businesses that sell merchandise through Amazon's FBA Program must collect and remit Pennsylvania sales tax pursuant to Section 237(b)(1) of the Tax Reform Code of 1971 . . . ."

We grant Grosz's third request for judicial notice as to the complaint the State of California filed against Amazon in the San Francisco County Superior Court.

We deny the request as to the Commonwealth Court of Pennsylvania opinion. "[A] court will not take judicial notice of a case that was not cited in the briefs." Neither will appellate courts "take judicial notice of matters *irrelevant* to the dispositive point on appeal." The interpretation of a sister state's statute by that state's courts that was not discussed in the briefs is not relevant to our consideration of the issues on this appeal. Indeed, the question at issue on that appeal—whether non-Pennsylvania businesses that sell merchandise through Amazon's FBA Program must collect and remit Pennsylvania sales tax—has no bearing on whether the determination of who is a retailer under California's Sales and Use Tax Law is a ministerial task or involves the exercise of DTFA discretion.

25

interpretation of its meaning.' [Citation.] While courts take judicial notice of public records, they do not take notice of the truth of matters stated therein." (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.)

We make no comment on either the BOE's analysis or any party's characterization of what the judicially noticed letters do or do not establish vis-à-vis the Sales and Use Tax Law. Neither do we endorse or reject any of the contents of any of the judicially noticed documents. The letters attached to Grosz's first request for judicial notice in this court and to Amazon's request for judicial notice in the trial court *do*, however, demonstrate that the determination about whether a taxpayer is a retailer under the Sales and Use Tax Law involves analysis of a number of facts and circumstances. The BOE, and now the DTFA, obviously considered a host of factors and, in some cases, required extensive communication with the taxpayer to develop an understanding of relevant facts to ultimately determine whether a particular taxpayer was a retailer under Revenue and Taxation Code section 6015.

The BOE's powers have shifted to the DTFA. But we have no reason to believe that the scope of those powers or the discretion vested the agency has changed in any way. To the contrary, upon its creation, the DTFA was designated "the successor to, and [was] vested with, all of the duties, powers, and responsibilities" of the BOE. (Gov. Code, § 15570.22.)

In sum, and contrary to Grosz's arguments here, there is no statute or regulation that conclusively establishes that the DTFA must pursue Amazon for sales and use taxes related to FBA transactions. Indeed, the language of Revenue and Taxation Code section 6015, subdivision (a) makes it clear that there may

26

be *multiple* "persons" (as that term is statutorily defined) who the DTFA may regard as "retailers" for the purposes of a single transaction. The statutory framework of the Sales and Use Tax Law and the statutes vesting the DTFA with authority to administer that statutory framework also generally lead us to conclude that whether a taxpayer is a retailer for purposes of the Sales and Use Tax Law is a discretionary determination and not a ministerial task. Consistent with those conclusions, we agree with the trial court that Grosz's lawsuit may not proceed under Section 526a. (*Silver, supra*, 26 Cal.App.3d at p. 909; cf. *Sonoma, supra*, 195 Cal.App.3d at p. 989.)

At oral argument, Grosz forcefully contended that if we were to reach the conclusion that we have reached, the DTFA's determination about the identity of a "retailer" under the Sales and Use Tax Law would be "unreviewable." There are, in fact, at least two ways the DTFA's determination can be reviewed. The Sales and Use Tax Law gives the DTFA the authority to "bring an action . . . in the name of the people of the State of California to collect" delinquent taxes, for example. (Rev. & Tax. Code, § 6711.) In a collection action, "the provisions of the Code of Civil Procedure relating to service of summons, pleadings, proofs, trials, and appeals are applicable to the proceedings." (Rev. & Tax. Code, § 6712.) The Sales and Use Tax Law also has a detailed procedure through which a taxpayer can challenge the DTFA's determinations through a refund process, and ultimately in court. (Rev. & Tax. Code, §§ 6901 et seq., 6932.) It is not at all accurate, then, that the DTFA's exercise of discretion is unreviewable simply because it is not subject to review in *this* forum and by *this* mechanism.

27

We affirm the trial court's order sustaining the DTFA's and Amazon's demurrers and dismissing the lawsuit.

## DISPOSITION

The trial court's orders are affirmed.  The respondents are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


BENDIX, Acting P. J.


BENKE, J.*

---

 * Retired Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.